W. L. PHILBRICK, DIRECTOR OF FUNERALS, INC., and W. L. PHILBRICK v. CITY OF MIAMI BEACH, a Municipal Corporation.

Opinion Filed June 20, 1941

Division A

Rehearing Denied July 14, 1941

540

*William Jennings Dunn* and *Harold M. Wilson,* for Appellants.

*J. Harvey Robillard* and *V. B. Rutherford,* for Appellee.

PER CURIAM:—Appeal brings for review final decree of injunction whereby it was, *inter alia,* adjudged and decreed:

"The defendants, W. L. Philbrick, Director of Funerals, Inc., and W. L. Philbrick, their servants, agents and employees and each and every of them be and they are hereby permanently and perpetually enjoined and restrained from using lots 8 and 9, Block 3, of Fisher's First Subdivision of Alton Beach, according to the plat thereof recorded in Plat Book 2 at page 77 of the Public Records of Dade County, Florida, and the improvements and buildings situate thereon as a funeral home, a funeral parlor or undertaking establishment, and from using said premises for the purposes of conducting funerals or acting as funeral directors, and that they cease and desist from conducting and holding funerals on said premises, and from advertising or holding themselves out as conducting said business thereon contrary to the provisions of any valid, subsisting ordinance of the City of Miami Beach, prohibiting such uses and actions, but this injunction shall not become effective until ten days from this date."

The case appears to be ruled by our opinion and judgment in the case of State ex rel. Skillman v. City of Miami, 101 Fla. 585, 134 Sou. 541. It is true that the Skillman case originated with the issuance of a writ of habeas corpus, while in the instant case suit was instituted in Chancery by a municipality, the

City of Miami Beach, to enjoin the conducting of a funeral home in a residential district of the City of Miami Beach in violation of the Zoning Ordinance of the City of Miami Beach, Florida.

Had the suit been brought by an individual, the contention of the appellant that special injury would have to be shown might be sustained; but, as it is, suit was brought by the governmental authorities in the governmental function of protecting the public.

In Pompano Horse Club v. State, 93 Fla. 415, 111 Sou. 801, we held:

"The duty of protecting the property right of all its citizens is sufficient warranty in issuing the injunction. Therefore, wherever a public nuisance is shown, equity must enjoin it at the suit of the government. Every place where a public statute is openly, publicly, repeatedly, continuously, persistently and intentionally violated, is a public nuisance."

This enunciation, coupled with what we said in the Sillman case, *supra,* is sufficient to warrant the injunctive relief.

No reversible error being made to appear in the record the decree is affirmed.

BROWN, C. J., WHITFIELD, BUFORD and ADAMS, J. J., concur.

BROWN, C. J. (concurring):—The bill in this case alleges the adoption by the plaintiff City of a zoning ordinance in 1930, a copy of which is made a part of the bill, which ordinance sets out certain use regulations and restrictions on property located in the various zones therein established, and provides that violation of such restrictions shall be punishable by fine or imprisonment, or both, and that each day a

violation is permitted to exist shall constitute a
separate offense. It is further alleged that one of the
defendants is the owner of certain premises at 1853
Washington Avenue which is within a district zoned
for residential use; that defendant keeps, maintains
and operates the same together with the building,
furniture and fixtures and equipment, for the purpose
of conducting thereon and therein the business of a
funeral director, funeral parlor, funeral home, etc.
The bill recites without giving any date that a peti-
tion was filed with the City Council of Miami signed
by property owners in the neighborhood, objecting
to such use of the property, alleging that such use is
damaging to them and their property. It is also
alleged that defendants hold out and advertise said
premises for said prohibited business. The bill al-
leges that the business conducted by the defendants,
appellants here, is a violation of said zoning ordinance.
Then follows the general allegation that by reason of
the aforesaid facts "plaintiff and the tax payers and
property owners and citizens thereof suffered irrepa-
rable damage for which they have no adequate remedy
at law." The prayer was for temporary injunction
against the alleged unlawful use of the property and
that upon final hearing a perpetual injunction be
granted.

A motion to dismiss the bill for want of equity was
filed, which also set up that the bill showed that
plaintiff had an adequate remedy at law. This motion
was denied.

In their answer the defendants admitted the allega-
tions as to the ownership of the property and its
location, but the defendant Philbrick alleged that the

premises were used by him and his family as a dwelling place.

While the defendants denied that any business was conducted upon the premises, the defendant Philbrick, Inc., admitted that the premises were occasionally used for the benefit of clients of its business, which business was that of a funeral director, etc., and that its place of business was located at 660 W. Flagler Street in the City of Miami; that the premises here in question were principally used by W. L. Philbrick as a dwelling and residence for himself and family and that a certain part of the dwelling was set apart and used as a funeral chapel, as an accommodation and without charge, wherein burial services might be held, but that the activities pertaining to the undertaking business were carried on in the City of Miami, where defendant corporation had an establishment equipped for such uses and purposes.

While the plaintiff's evidence was not very strong, the master and the chancellor concluded that the defendants had been and were conducting a funeral home on the premises described in the bill, in violation of the zoning ordinance. There was evidence to support this finding. The rule is that we will not disturb the findings of the chancellor on the facts unless they are clearly erroneous.

The most serious legal question presented by this case is the sufficiency of the bill to withstand the motion to dismiss. It will have been observed that the bill does not contain any express allegation that the conduct of the defendant's business at the place in question constituted either a public nuisance or a private nuisance to the adjoining property owners. If it constituted a mere private nuisance to adjoining

or nearby property owners, such adjoining property owners had their remedy. If it constituted a public nuisance, then the city had a right to file the bill. It is well settled that equity will not enjoin prosecutions for the mere violation of penal statutes or ordinances, but it will enjoin the conduct of a business which amounts to a public nuisance, whereby danger and injury is done to the plaintiff, or, where the plaintiff is a public body like a municipality, whereby damage and injury is done to its citizens, property owners and tax payers.

As shown above, the bill contains no express allegation to the effect that the conduct of the business in question constituted a nuisance. It does allege that the defendants were engaged in the undertaking business within a residential district, in violation of the zoning ordinance. The general rule is that in cases in equity brought to enjoin a nuisance, such purpose should be clearly indicated and facts alleged showing the existence of the alleged nuisance and the character and extent of the danger or damage occasioned thereby.

So, it seems to be contended by appellants, in effect, that the sufficiency of the bill narrows down to this question; Is the conducting of a funeral home or an undertaking business in a residential district, contrary to the inhibitions of the city's zoning ordinance, a nuisance *per se*?

In his final decree, the learned chancellor cites the case of State *ex rel.* Skillman v. City of Miami, 101 Fla. 585, 134 So. 541. This was a habeas corpus case, but in that case this Court held in effect that it was within the police power of the City of Miami to prohibit the location and conducting of a funeral home

or mortuary in a residential section of the City. In the course of the opinion it is stated that "it must be accepted as a matter of common knowledge" that contact with a funeral home may result in great discomfort, depression and unhappy thoughts. It was also said in that case:

"It is a well recognized fact that people throughout all ages have generally possessed what may be, or be akin to, horror of death. In the presence of a funeral home, it is hard for the average person to eliminate from his mind the depressing contemplation of death. When one looks upon a funeral home his thoughts naturally turn to the certainty of death and to the scenes of desolation and sorrow which within his experience have been occasioned by the grim reaper."

The case of Williams v. Montgomery, 184 Miss. 547, 186 So. 302, was a case where a bill for injunction was brought by certain residents owning adjacent property seeking to enjoin the operation of a funeral home and undertaking establishment in the residential district where their property was located. We gather from the opinion that in that case all the essential allegations were made with reference to the undertaking establishment constituting a nuisance. Injunction was granted and on appeal the Supreme Court of Mississippi affirmed the lower court and the first two head notes read as follows:

"A constant reminder of death, naturally caused to those in the vicinity of a funeral home, is bound to have a depressing effect upon persons who have sought a quiet street and established it for a long time, and tends to impair the right to enjoy life, liberty and pursuit of happiness."

"Judges must be supposed to be acquainted with the reaction of the average, normal person and his sentiments and feelings."

The foregoing case is cited and also another Mississippi case, Davis v. Holmes, 198 So. 25. These cases are cited in the chancellor's decree.

While the Court might take judicial knowledge that the operation of a funeral home in a residential section of a town or city *may* constitute a public nuisance, or at least a private nuisance to those living in the immediate neighborhood, we could hardly go so far as to say that in all cases it would constitute a nuisance *per se*. In the ordinary case to enjoin the operation of a funeral home or undertaking establishment in a residential district on the grounds of nuisance, allegations of fact should be made supporting such charge.

But aside from this, as the chancellor stated in his opinion in this case, it is hardly reasonable to say that in a case of this kind the city may prosecute these defendants in its own municipal court under the penal provisions of the zoning ordinance, but may not come into a court of equity and enjoin the continued wrongful use by the defendants of their property simply because such wrongful use amounts to a violation of the ordinance. A city zoning ordinance is something more than a mere penal ordinance. In this connection the opinion of the chancellor further says:

"Equity by injunction does not punish past acts, it does not determine or adjudge one to be guilty of any offense, it does not convict one of a crime and has no concern with what has gone before except as what has gone before may tend to prove what may be expected in the future. In granting an injunction the Court of Equity says in effect to the defendants,

your use of your property is injurious to your neighbors; it is in the nature of a nuisance; from now on such use must be discontinued. In saying this and granting the injunction the Court of Equity prevents a multiplicity of suits by each individual who may be injured by the wrongful use of the property, it prevents repeated trials for each separate offense, it functions in the interest of public peace and good order and it is a wholesome and effective and just use of injunction in the public interest."

The following quotation from Section 151, 28 Am. Jur., appears to support the chancellor's conclusion on this point:

"Probably no court would deny the right of a state or a political division thereof to an injunction restraining criminal acts harmful or destructive to property rights of its own or those held in trust for the public. Also, according to some authorities, the state, on the principle of its right to restrain crime where its interests or the interests of those entitled to its protection will be injuriously affected, may restrain a criminal act which will injure the rights, interests, and liberties of its people even though tangible rights are not affected. The United States Supreme Court has said that since every government is entrusted by the terms of its existence with powers and duties to be exercised for the general welfare, it may apply to its own courts for any proper assistance in the exercise and discharge of those powers and duties, without the necessity of having pecuniary rights involved. Inadequacy of the remedy by prosecution at law has also been said to be a ground for enjoining criminal acts for the prevention of irreparable injury to the rights of the public. However,

many courts applying the theory that injunctions will only issue for the protection of property rights where irreparable injury is threatened, hold that the state cannot invoke the jurisdiction of equity for an injunction restraining acts for which the perpetrator can be punished by the criminal or penal laws, if no property rights of the state or the public at large will be injured, and the act complained of does not come under the head of public nuisances, although it is generally recognized that injunction may be granted at the instance of the state, municipality or other political unit, to prevent public nuisances, even though property rights are not involved."

See also Pompano Horse Club v. State, 93 Fla. 415, 111 So. 801.

It is hardly reasonable to say that a zoning ordinance, protecting mllions of dollars of investments in a city the size of Miami Beach, can only be enforced by invoking the penal provisions thereof in a court of limited jurisdiction, such as the municipal police court. Our view is that the municipality can also, in proper cases, seek the aid of the strong arm of equity to enjoin the further and continued unlawful use of property in violation of an ordinance which, as in this case, so vitally affects the interests of its citizens and property owners, and general welfare of its inhabitants.

Upon this theory I think that the chancellor was justified in holding that there was equity in the bill, and I concur with the other members of the Court in now holding that the decree of the court below should be affirmed.

WHITFIELD, BUFORD and ADAMS, J. J., concur.