**CITY OF NORTH MIAMI BEACH v. STEVEN'S MARKET, Inc.**
No. 63-C-4224.

Circuit Court, Dade County.
October 2, 1963.

Norman R. Lyons, North Miami Beach, for plaintiff.

Kenneth M. Myers, Miami, for defendant.

HAL P. DEKLE, Circuit Judge.

Defendant by its motion to dismiss directly attacks the standing of the plaintiff municipality to seek injunctive relief to enjoin an alleged public nuisance because of certain activities of defendant in operating an incinerator disposal plant which the city asserts is detrimental to the health of its citizens and otherwise a nuisance by reason of smoke and soot emitted therefrom within the city. Defendant strongly urges that a *public* nuisance can only be enjoined by suit in the name of the state, or by a private citizen under §64.11, Florida Statutes.

Argument revolves around §64.11, Florida Statutes, authorizing action to abate any nuisance as defined in §823.05 dealing, inter alia, with the maintaining of any place which tends to annoy or injure the health of the community. The persons thus authorized to maintain suit are "the state's attorney, county solicitor, county prosecutor, or any citizen of the county through any attorney he may select, in the name of the state upon the action of such attorneys or citizen."

It is the court's view that §64.11 is not determinative of the question. This section has been referred to as an additional remedy and this court does not view it as exclusive. National

Container Corp. v. State, ex rel. Stockton, 38 Fla. 32, 189 So. 4, 122 ALR 1000; Opinion of the Attorney General 058-4, Jan. 3, 1958.

We must look to the general law to determine the right or standing of a municipality to sue to enjoin a public nuisance. We of course here do not deal with abatement of a *private* nuisance where special damages must be shown.

The contention is made in defendant's able brief that the principal Florida cases cited by plaintiff deal with the violation of a municipal zoning or other *ordinance*, pointing out that here the city does not rely on the violation of any ordinance. Such cases include Philbrick v. City of Miami Beach (Fla. 1941), 3 So.2d 144; City of Miami Beach v. Texas Co. (Fla. 1940), 194 So.368; Knowles v. Central Allapattae Properties (Fla. 1940), 198 So 819.

Philbrick, supra, states, however, that —

" . . . it is generally recognized that injunction may be granted at the instance of the state, *municipality* or other political unit, to prevent public nuisances, even though property rights are not involved." (Citing Pompano Horse Club v. State, 93 Fla. 415, 111 So. 801, 52 ALR 51.) (Italics added.)

Then follows the statement —

"Our view is that the municipality can also, in proper cases, seek the aid of the strong arm of equity to enjoin the further and continued unlawful use of property in violation of an ordinance which, as in this case, so vitally affects the interest of its citizens and property owners, and the general welfare of its inhabitants."

There is also the general statement by way of dictum in City of Jacksonville v. State, ex rel. Mann (Fla. 1946), 27 So.2d 727, as follows — " . . . The city maintains plenary power to protect its citizens by abating a nuisance when and if that condition should occur."

Knowles, supra, at page 822, seems to eliminate the necessity of an ordinance as a prerequisite to the standing of a municipality to sue when it says —

" . . . While the ordinance of the City of Miami, supra, defines a nuisance, we do not think it necessary for a decision of the case at bar to bottom our conclusions on the ordinance because this court, in the case of City of Miami Beach v. Texas Co., 141 Fla. 616, 194 So. 368, text page 374,

128 ALR 350, held that to constitute a thing a legal nuisance, it must be so in fact, regardless of a declaration of an ordinance on the subject. The court said —

'It is generally recognized that anything which is detrimental to health or which threatens danger to persons or property within the city may be regarded and dealt with by the municipal authorities as a nuisance.' . . . "

See also McQuillin on Municipal Corporations, 2d Ed., Vol. 3, §956 (pp. 125, 126.)

Fearful that these judicial pronouncements by our Florida Court are not sufficiently direct on the subject of the standing of the municipality, absent an ordinance, to invoke the aid of the long arm of equity, the court has looked outside this jurisdiction and finds ample support for the standing of a municipality to invoke equity jurisdiction to enjoin a public nuisance.

The ordinance question is flatly answered in Village of Kenesaw v. Chicago, B. & Q.R. Co. (Neb. 1912), 136 N.W. 990, 99 — " . . . We are satisfied that it was not incumbent on the village to enact an ordinance prohibiting the maintenance of stockyards in the locality complained of before it had the right to apply to a court of equity for relief."

This principle is referred to in Kenesaw as the sounder and better rule and authorities are there cited. This court does not overlook that in that case there was a statute authorizing the abatement of nuisances by a municipality. Such statute was there referred to, however, as a general statute under which the court found a municipality had standing to sue. Florida has a like statute, §167.05 — "The city or town council may prevent and abate nuisances; . . . ".

Both Alabama and New York are states having such express ordinances but their highest courts have held that the standing of a municipal corporation to bring an action to restrain a public nuisance is dictated by policy and principle and finds warrant in both the common law and statutes of those states. Duncan v. Tuscaloosa (Ala.), 60 So.2d 438; New York Trap Rock Corp. v. Town of Clarkstown (N. Y. Court of App. 1949), 85 N.E. 2d 873, 877.

Clarkstown, supra, also goes into the background of the reason originally for actions to restrain public nuisances being vested in the Attorney General, pointing out that this was to avoid multiplicity of suits and saying — " . . . That danger is obviously eliminated when the action to restrain a town nuisance is brought

by the town which has general power to sue, and not by a private individual . . . ". The opinion then deals with the other consideration which originally vested in the Attorney General the right to bring such actions, that is, that the offense being one common to the public should be enjoined at the suit of the sovereign's law officer, and includes as further reasoning —

" . . . In permitting the creation of such local subdivisions, the legislature obviously conferred upon them the right to protect their own existence, and it is clear that a public nuisance which injures the health of the citizens of a municipality imperils the very existence of that municipality as a governmental unit. The right to exist necessarily implies the right to take such steps as are essential to protect existence. Pomeroy in his work on Equity Jurisprudence, Vol. 4, 5th Ed. § 1349, recognizes that, while the Attorney General is the proper one to bring such actions in England, the power may be exercised more generally by other representatives of the people in this country. He says: 'A court of equity has jurisdiction to restrain existing or threatened public nuisances by injunction, at the suit of the Attorney General in England, and at the suit of the state, or the people, *or municipality*, or some proper officer representing the commonwealth in this country.' " (Italics added.)

An interesting conclusion in the opinion in Clarkstown, supra, is that the power of physical, summary abatement of a nuisance (also in §167.05, Fla. St.) is far more drastic than an equity action first to determine whether an alleged public nuisance should be abated, and that municipal authorities should not destroy property as a nuisance unless they knew it to be such; and that such injunctive action may be necessary for the protection of the town, to act upon the judgment of the court, rather than by summary action to abate without first determining that a public nuisance in fact exists, and if there be any doubt, then procedure by injunctive relief should be invoked.

This is the modern rule and the more logical and reasonable one in view of the development of municipalities in this country, rather than the English common law background referred to in Georgetown v. Alexandria Canal Co., 12 Peters (U.S.), 91 at 98, 9 L. Ed. 1012 (1838), cited by defendant as controlling. Our municipalities today are as far advanced from that day (1838) as were then the "Aldermen of Georgetown" from the English hamlet. There, too, the act sought to be enjoined, the construction of an aqueduct across the Potomac River, was beyond the municipal concern and beyond its municipal limits, involving the states of Virginia and Maryland along the navigable Potomac and adjoining canals.

McQuillan on Municipal Corporations, 3d Ed., Vol. 17, §49.59 (p. 297), cites numerous jurisdictions holding suit by a municipality proper to enjoin nuisances detrimental to the public health, safety, morals or peace. Two exceptions stated there are 1) in the absence of a statute providing to the contrary, and 2) if there be another adequate remedy. Criminal action under an ordinance has frequently been held to be inadequate. Philbrick v. City of Miami Beach, supra.

Under the statutory exception is cited City of Algoma v. Peterson, 233 Wis. 82, 288 N.W. 809, holding that a statute such as our §64.11 precludes suit by a municipality. There did not appear to be, however, a general statute in Wisconsin authorizing abatement of nuisances, such as Florida's §167.05.

Accordingly, defendant's motion to dismiss is denied.