202 So.2d 782 (1967)
Leo ROTENBERG, Individually and Doing Business As Standard Iron Metal & Auto Parts, Appellant,
v.
CITY OF FORT PIERCE, Florida, a Municipal Corporation, Appellee.
No. 579.
District Court of Appeal of Florida, Fourth District.
September 29, 1967.
*783 Angus Sumner and Ben L. Bryan, Jr., of Sumner & Bryan, Fort Pierce, for appellant.
David L. McCain, Fort Pierce, for appellee.
WILLIAMS, O. EDGAR, JR., Associate Judge.
This is an appeal by the defendant below, Leo Rotenberg, individually and d/b/a Standard Iron Metal & Auto Parts, from a final decree and injunction granting injunctive relief to the plaintiff below, City of Fort Pierce, Florida.
The suit below was brought by the City of Fort Pierce for an injunction to enforce the provisions of its zoning ordinance E-191, regulating junk yards within the city limits. In substance, this ordinance as applied to an existing junk yard (in which category the appellant falls), required that after the effective date of the ordinance (May 4, 1964) no junk was to be placed or stored within seventy-five feet of the boundary of any residential district, and further, that within one year from said effective date, a junk yard owner-operator was to surround the yard with a substantial, continuous masonry fence or wall eight feet in height, or by vegetative screening in compliance with the requirement of the following subsection 2(c) of said ordinance:
"(c) The area to be occupied by the junk yard shall be entirely surrounded by a substantial, continuous masonry fence, or wall eight feet in height, or by vegetative screening. Such fence or wall shall be of similar composition, construction, and color throughout and shall be constructed without openings except for one entrance and one exit, such entrance and *784 exit to be equipped with unpierce gates. Such gates shall be closed and securely locked at all times, except during business hours. Plans for such fence or wall shall be submitted to the City Planning Board who shall determine whether or not the proposed fence will meet the requirements of this Ordinance. No building permit shall be issued for the construction of such fence or wall until the approval of the City Planning Board has been secured. Such fence shall be maintained in good order and shall not be allowed to deteriorate.
"If vegetative screening is to be substituted for such fence or wall, plans for such screening shall be submitted to the City Planning Board. Such vegetative screening shall consist of a greenbelt strip not less than 20 feet wide where it adjoins another lot line, nor less than 10 feet wide where it adjoins a street line. The greenbelt shall be composed of at least one row of deciduous or evergreen trees and one or two rows of shrubs. The City Planning Board shall approve, or disapprove, such request for vegetative screening. The vegetative screening shall be cared for and maintained in a husbandlike manner by the operator of the junk yard."
The appellant has operated his junk yard in the City of Fort Pierce since 1949. During the period of time that his junk yard has been in operation, a restaurant, an automobile agency, and numerous homes have been built in the immediate vicinity. Upon passage of the ordinance in question, the appellant's junk operation was a nonconforming use, part of his land being zoned B-2 and part zoned residential. Minutes of the city commission admitted into evidence in the trial court show that originally the ordinance required compliance within six months but that at the defendant's request the time limitation was extended to one year. The minutes further reveal no objection to the ordinance in any way. In fact, as late as August 23, 1965, defendant requested another extension of time within which to construct his fence in accordance with the ordinance. The defendant failed to comply with either the fencing or the setback requirements of the ordinance and the City of Fort Pierce, accordingly, brought its suit for an injunction.
The trial court found that the testimony presented at trial established that junk material exists over the entire tract beyond the setback lines required by the ordinance, that weeds exist throughout the property, and that rainwater stands stagnant in much of the junk. The court found that the defendant has not attempted to comply with the ordinance and has made no application for approval of any fence under the ordinance. The court further found that the operation of this junk yard, contrary to the ordinance, is a menace to public health and welfare.
Based on its findings, the court entered a final decree enjoining appellant from conducting a junk business on the premises except for the sale and removal of existing junk until he had complied with the ordinance and further directing the removal of all junk beyond the setback lines established by the ordinance and the establishment of a fence or vegetative screening as required by the ordinance. From this final decree the appellant took this appeal.
The appellant raises six points on this appeal. The appellant first contends that the ordinance is unconstitutional in that it is an unlawful delegation of authority to the city planning board in giving the city planning board the right and authority to determine whether or not the fence will meet the requirements of the ordinance. With this contention we disagree. We feel that the ordinance has sufficiently established the guides and standards to be applied by the city planning board in determining whether or not an application for construction of a fence or wall or vegetative screening as specified in the ordinance meets the requirements of such ordinance and therefore is not an unlawful delegation of authority to the city planning board.
*785 The trial court found that the appellant never presented plans to the city nor sought a permit, and as no proposed compliance by him had been turned down by the city, only the face of this provision could be considered in considering its constitutionality, rather than its application to the appellant. It is well settled that, where a city ordinance appears on its face to have been regularly enacted, all presumptions will be indulged in favor of its validity. Bessemer Properties, Incorporated v. Miami Shores Village, Fla.App. 1959, 110 So.2d 87; City of Sarasota v. Sunad, Inc., Fla.App. 1959, 114 So.2d 377; and Union Trust Company v. Lucas, Fla.App. 1960, 125 So.2d 582. Considering the requirements set forth in the ordinance for consideration by the city planning board, we conclude that the ordinance is not unconstitutional as an unlawful delegation of authority to the city planning board.
The appellant's second contention is that the ordinance is unconstitutional in that it discriminates between his business and other businesses set out as exceptions in the ordinance. The provision complained of is section 1 of the ordinance which reads as follows:
"Section 1. `Junk Yards' as used in this Ordinance shall be a place, structure, lot or parcel of land where junk, waste, discarded, salvaged or similar materials such as old metals, wood, slush, lumber, glass, paper, rags, cloth, bagging, cordage, barrels, containers, etc., are bought, sold, exchanged, baled, packed, disassembled, or handled, including auto wrecking yards, used lumber yards, housewrecking yards and yards or places for storage or handling of salvaged house wrecking and structural steel materials. This definition shall not include pawn shops and establishments for the sale, purchase, or storage of usable second hand cars, salvaged machinery, used furniture, radios, stoves, refrigerators or similar household goods and appliances, nor shall it apply to the processing of used, discarded, or salvaged materials as part of manufacturing operations."
We conclude that the ordinance is not discriminatory since it applies equally to all junk yards and that the exceptions pertaining to other businesses are reasonable as the regulation of these businesses involve different problems from those involved in regulation of a junk yard. A statute enacted in the exercise of the police power need not apply equally to all persons in the state but only to "all persons similarly circumstances." Atlantic Coastline Railway Company v. Coachman, 1910, 59 Fla. 130, 52 So. 377.
Appellant's third contention is that the ordinance is unconstitutional since it has no relation to the health, welfare or morals of the community. Again, we must disagree. The police power is not to be confined narrowly within the field of public health, safety or morality. It is within the police power to regulate occupations or businesses which, by their nature, their location, or the manner in which they are conducted, if conducted without restriction, are or may be materially injurious to the public health, morals, comfort, prosperity or convenience, or otherwise detrimental to the general welfare. The requirements of fencing or screening of junk yards from public view have been sustained in several jurisdictions. See City of Shreveport v. Brock, 1956, 230 La. 651, 89 So.2d 156; Murphy, Inc. v. Town of Westport, 1944, 131 Conn. 292, 40 A.2d 177, 156 A.L.R. 568; People v. Sevel, 1953, 120 Cal. App.2d Supp. 907, 261 P.2d 359; and Vermont Salvage Corporation v. Village of St. Johnsbury, 1943, 113 Vt. 341, 34 A.2d 188. Aesthetics have also been held to be a valid basis for such regulation as the trial court so found:
"* * * In addition aesthetics have been held a valid basis for zoning in Florida. Sunad, Inc. v. City of Sarasota, 122 So.2d 611 (Fla. 1960); City of Miami Beach v. Ocean and Inland Co., [147 Fla. 480] 3 So.2d 364 (Fla. 1941). Certainly *786 the City of Fort Pierce is no less an attraction to tourists for its aesthetic qualities than the cities of Miami Beach and Sarasota. For the foregoing reasons the Court concludes that ordinance E-191 is constitutional against the attacks made by Defendant."
As his fourth contention the appellant urges that the injunctive process was unavailable to the appellee and that a criminal prosecution was a proper remedy for enforcement of the ordinance by the City of Fort Pierce. We hold otherwise and need only cite the language of the able chancellor used in his final decree:
"Section 1.8 of the City Code of Fort Pierce cited by Defendant in his brief and repeated by Plaintiff in its reply brief, gives authority to the City to abate as provided by law any condition caused or permitted to exist in violation of any ordinance, in addition to the application of penalties provided by the ordinance. The Florida Supreme Court has held that injunctive relief is proper procedure for a city to prevent violation of its zoning ordinances. Philbrick v. City of Miami Beach, [147 Fla. 538] 3 So.2d 144 (Fla. 1941). Accordingly Defendant's argument that the use of the injunctive process is improper or that the City was obligated to use other procedures, such as criminal prosecution, is invalid."
Appellant's fifth contention is that the evidence was insufficient to establish that the operation of the junk yard contrary to the ordinance constituted a menace to public health and welfare. From the consideration of the entire record on appeal and for the reasons previously stated, we find that there was ample evidence to support the findings of the trial court that the operation of the junk yard contrary to the ordinance is a menace to public health and welfare.
As his sixth and final point on appeal, the appellant contends that the court erred in ordering him to affirmatively establish a fence or vegetative screen as required by the ordinance. The injunctive provisions of the final decree were as follows:
"It is therefore ORDERED, ADJUDGED AND DECREED that:
* * * * * *
"2. The Defendant shall be and he is hereby enjoined and prohibited from conducting a junk business upon the premises described in the Complaint, with the exception of the sale and removal of junk existing upon the property, until such time as he has complied with provisions of ordinance E-191.
"3. The Defendant shall be and he is hereby ordered to comply with the provisions of ordinance E-191 and in particular to remove all junk from beyond the set back lines established by said ordinance and to establish a fence or vegetative screening as required by said ordinance."
Appellant takes no issue with numbered paragraph 2 but does take issue with numbered paragraph 3, in that he contends that the court was unjustified in issuing an affirmative command for him to establish a fence or vegetative screening as required by the ordinance.
It does appear that numbered paragraph 3 of the final decree should be clarified and stated in the alternative; in other words, ordering the appellant, within a reasonable period of time to be fixed by the trial court, to either comply with the provisions of ordinance E-191, or, in the alternative, to remove the junk and abate the nuisance complained of. Otherwise, the appellant would be left no alternative but to construct the fence or vegetative screening even if he elected to remove the business. Accordingly, the cause will be remanded to the trial court with directions for the trial court to amend paragraph 3 of its final decree to order in the alternative either compliance with the provisions of ordinance E-191, or removal of the junk and abatement of the *787 nuisance complained of within a reasonable period of time to be fixed by the trial court after a hearing thereon. All other provisions of the final decree and injunction will be affirmed.
Affirmed, in part, and reversed, in part, with directions.
ANDREWS and CROSS, JJ., concur.