Opinion issued March
10, 2011



In The

Court of Appeals

For The

First District of
Texas

————————————

NO.
01‑08‑00758‑CV

———————————

Dallas National Insurance Company,
Appellant

 

V.

 

Sabic Americas, Inc.,
Appellee



 



 

On Appeal from the 270th
District Court

Harris County, Texas



Trial Court Case No. 2007-48247-A

 



 

O
P I N I O N

          Seeking a determination of its rights
and obligations under four commercial general‑liability insurance
policies it had issued to appellee Sabic Americas, Inc., appellant Dallas
National Insurance Company filed a declaratory‑judgment action.  Sabic filed a
counterclaim seeking, inter alia, a declaratory judgment that
the four policies obligated Dallas National to defend and indemnify it in eight
underlying lawsuits.  With both parties’
cross‑motions for summary judgment before it, the trial court granted
Sabic’s motion and ordered Dallas National to reimburse Sabic for any defense costs it incurred as a result of
the underlying lawsuits.  On appeal,
Dallas National contends that the trial court erred in declaring that it was obligated to defend and reimburse
Sabic.  We affirm.

Background

          Eight lawsuits were filed
against Sabic—four in the Southern District of New York and four in the Middle
District of Florida (underlying lawsuits).[1]  The plaintiffs in each of the underlying
lawsuits allege that they are municipal corporations supplying water to
thousands of customers residing within their respective boundaries[2]
and allege that their water supply systems and groundwater were contaminated by
the methyl tertiary butyl ether (MTBE)
that over fifty defendants, including Sabic, added to the petroleum products
that they manufactured, refined, formulated, distributed, supplied, sold and/or
marketed.  The pleadings in the underlying
lawsuits raise numerous causes of action, including negligence, product
liability, deceptive business practices, and trespass.  The plaintiffs in each of those lawsuits are
seeking (1) removal of contaminants from the groundwater and soil, (2) testing
and monitoring of their groundwater, and (3) recovery of damages for testing
costs, remediation, or treatment costs, including damages to water wells,
pumping stations, filters, and other property.

          Although
the pleadings in each of the underlying lawsuits raise specific allegations
with regard to some of the individual defendants, none of them raises any
specific allegations with respect to Sabic. 
Rather, the plaintiffs in the underlying lawsuits allege that the
“defendants,” including Sabic, began adding MTBE to the petroleum products that
they manufactured, refined, formulated, distributed, supplied, sold and/or
marketed beginning in the 1970s.  The
plaintiffs further allege that the defendants knew or should have known the
unique dangers that the addition of MTBE to gasoline and other petroleum
products posed to groundwater supplies as early as the 1970s.  According to the plaintiffs, MTBE
contamination was an inevitable result of the defendants’ intentional and
negligent conduct.  The plaintiffs
further allege that the defendants misled Congress and the public of the
dangers posed by MTBE and increased the amount of MTBE in their products,
despite knowledge of the hazards it posed. 
Plaintiffs also allege that MTBE begins to contaminate the groundwater
soon after it is released, and that the contamination is continuous, persistent,
and ongoing.  Although the plaintiffs
allege that the MTBE contamination began well before 2003, they also allege that
new spills and leaks of the petroleum products containing MTBE occurred
annually at all times relevant to the litigation.

          Sabic forwarded copies of the
complaints in all eight of the underlying lawsuits to Dallas National with the expectation that it
would receive a legal defense and indemnification pursuant to four commercial
general‑liability insurance policies covering July 2003 to July 2007.  Those policies provide in pertinent
part:

SECTION
I – COVERAGES

COVERAGE
A BODILY INJURY AND PROPERTY DAMAGE LIABILITY

1.  Insuring Agreement

a.
 We will pay those sums that the insured
becomes legally obligated to pay as damages because of “bodily injury” or
“property damage” to which this insurance applies.  We will have the right and duty to defend the
insured against any “suit” seeking those damages.  However, we will have no duty to defend the
insured against any “suit” seeking damages for “bodily injury” or “property
damage” to which this insurance does not apply.

.
. . .

b.
 This insurance applies to “bodily
injury” or “property damage” only if:

(1)
 The “bodily injury” or “property damage”
is caused by an “occurrence” that takes place in the “coverage territory”;

(2)
 The “bodily injury” or “property damage”
occurs during the policy period . . . .

 

The policies also include the following
relevant definitions:

 

13.  “Occurrence” means an accident, including
continuous or repeated exposure to substantially the same general harmful
conditions.

.
. . . 

15.  “Pollutants” means any solid, liquid, gaseous
or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids,
alkalis, chemicals and waste.  Waste
includes materials to be recycled, reconditioned or reclaimed.

.
. . .

17.  “Property Damage” means:

a.  Physical injury to tangible property,
including all resulting loss of use of that property.  All such loss of use shall be deemed to occur
at the time of the physical injury that caused it; or

b.  Loss of use of tangible property that is not
physically injured.  All such loss of use
shall be deemed to occur at the time of the “occurrence” that caused it.

The policies,
which contain pollution exclusions, also state that they do not
apply to bodily injury or property loss “expected or intended from the
standpoint of the insured.” 

          Dallas National denied
coverage and filed a declaratory‑judgment action against Sabic, seeking a
determination of Dallas National’s rights and obligations under the four
policies.[3]  Sabic filed its first amended answer and first
amended counterclaim, seeking a declaratory judgment against Dallas National to
defend and indemnify it as required under the policies.  Sabic and Dallas National subsequently filed
cross‑motions for traditional summary judgment.[4]  After hearings on both motions, the trial
court signed an order denying Dallas National’s motion and granting Sabic’s
motion on both its duty‑to‑defend and duty‑to‑indemnify
issues.  The trial court subsequently set
aside the order and signed a second order granting Sabic’s motion with respect
to the duty­‑to‑defend issue only, denying Dallas National’s motion
on both its duty‑to‑defend and duty‑to‑indemnify
issues, and declaring that Dallas National was obligated to defend Sabic in the
underlying lawsuits and reimburse Sabic for any defense costs it incurred as a
result.  The court also severed Sabic’s
breach‑of‑contract and attorney’s‑fee claims.  This appeal followed.

 

 

Discussion

          Dallas National raises one
issue: whether the trial court erred in declaring that Dallas National was
obligated to defend Sabic in the underlying lawsuits and indemnify Sabic for
any associated costs with its defense.  Dallas
National raises the following arguments in support of its position: 

1.     whether Sabic’s summary judgment motion and evidence were insufficient as
a matter of law to show “property damage” that occurred during any policy
period;

2.     whether the underlying lawsuits alleged an “occurrence” under the
policies;

3.     whether the fortuity doctrine barred coverage for the underlying lawsuits;

4.     whether coverage was excluded under the expected or intended exclusion
contained within the policies;

5.     whether coverage was excluded under the pollution exclusion; and 

6.    
whether the underlying
lawsuits in Florida alleged “property damage.”

Standard of Review

          We review a
trial court’s decision to grant or to deny a motion for summary judgment
de novo.  See Tex. Mun. Power Agency
v. Pub. Util. Comm’n, 253 S.W.3d 184, 192 (Tex. 2007).  Although a denial of summary judgment
is not normally reviewable, we may review such a denial when both parties move
for summary judgment and the trial court grants one motion and
denies the other.  Id.  In our review of such cross‑motions, we
review the summary judgment evidence presented by each party,
determine all questions presented, and render the judgment that the trial court
should
have rendered.  Id.
(citing Comm’r Court v. Agan, 940 S.W.2d 77, 81 (Tex. 1997)).

          Under the
traditional summary judgment standard, the movant has the burden to show that
no genuine issues of material fact exist and that it is entitled to judgment as
a matter of law.  Tex. R. Civ. P 166a(c); Nixon v. Mr. Prop. Mgmt. Co., Inc.,
690 S.W.2d 546, 548 (Tex. 1985).  In deciding
whether there is a disputed material fact issue precluding summary judgment,
evidence favorable to the nonmovant will be taken as true, and every reasonable
inference must be indulged in favor of the nonmovant and any doubts resolved in
its favor.  Nixon, 690 S.W.2d at
548–49.  A defendant moving for summary
judgment must conclusively negate at least one essential element of each of the
plaintiff’s causes of action or conclusively establish each element of its
cross-claim or affirmative defense.  Sci.
Spectrum, Inc. v. Martinez, 941 S.W.2d 910, 911 (Tex. 1997).

Duty
to Defend

          An insurer’s
duty to defend is determined by the allegations in the pleadings and the language
of the insurance policy.  See Zurich
Am. Ins. Co. v. Nokia, Inc., 268 S.W.3d 487, 495 (Tex. 2008) (applying
“eight‑corners” rule to determinations regarding duty to defend).  We resolve all doubts regarding the duty to defend in favor of the duty, and we construe the pleadings liberally.  Zurich Am. Ins. Co. v. Nokia,
Inc., 268 S.W.3d 487, 491 (Tex. 2008); King v. Dallas Fire Ins. Co.,
85 S.W.3d 185, 187 (Tex. 2002); see also
AccuFleet, Inc. v. Hartford Fire Ins. Co.,
322 S.W.3d 264, 270 (Tex. App.—Houston [1st Dist.] 2009, no pet.) (“We resolve
all doubts regarding the duty to defend in favor of the duty.”).  In reviewing the underlying pleadings, we
focus on the factual allegations that show the origin of the damages rather
than on the legal theories alleged.  See Nokia, 268 S.W.3d at 495; Lamar
Homes, Inc. v. Mid‑Continent Cas. Co., 242 S.W.3d 1, 13 (Tex.
2007).  The insurer’s duty to defend
arises when pleadings raise allegations that, if taken as true, potentially
state a cause of action within the terms of the policy.  Gehan
Homes, Ltd. v. Employers Mut. Cas. Co., 146 S.W.3d 833, 838 (Tex.
App.—Dallas 2004, pet. denied); Nokia, 268 S.W.3d at
495.  If potential coverage exists “for
any portion of the suit, an insurer must defend the entire suit.”  Stumph
v. Dallas Fire Ins. Co., 34 S.W.3d 722, 728 (Tex. App.—Austin 2000, no pet.).

          We interpret
insurance policies according to the rules of contract construction.  See Am.
Mfrs. Mut. Ins. Co. v. Schaefer, 124 S.W.3d 154, 157 (Tex. 2003); SMI
Realty Mgmt. Corp. v. Underwriters at Lloyd’s, 179 S.W.3d 619, 624 (Tex. App.—Houston [1st Dist.] 2005, pet. denied).
 Our primary goal in doing so is to give
effect to the written expression of the parties’ intent.  SMI Realty Mgmt. Corp., 179 S.W.3d at 624.  To this end, we construe the terms of
the contract as a whole and consider all of its terms, not in isolation, but
within the context of the contract.  Id.; Forbau
v. Aetna Life Ins. Co., 876 S.W.2d 132, 133–34 (Tex. 1994).

          If a contract
can be given only one reasonable meaning, it is not ambiguous and will be
enforced as written.  See Kelley‑Coppedge,
Inc. v. Highlands Ins. Co., 980 S.W.2d 462, 464 (Tex. 1998).  On the other hand, if a contract is
susceptible to two or more reasonable interpretations, it is ambiguous.  Id.  Whether a particular provision or the
interaction among multiple provisions creates an ambiguity is a question of
law.  See Nat’l Union Fire Ins. Co. v.
CBI Indus., 907 S.W.2d 517, 520 (Tex. 1995).  The fact that the parties may disagree about
the policy’s meaning does not create an ambiguity.  See Kelley‑Coppedge, Inc., 980
S.W.2d at 465.  When an alleged contract
ambiguity involves an exclusionary provision of an insurance policy, then we must
adopt the construction urged by the insured as long as that construction is not
unreasonable, even if the construction urged by the insurer appears to be more
reasonable or a more accurate reflection of the parties’ intent.  See Balandran
v. Safeco Ins. Co. of Am., 972 S.W.2d 738, 741 (Tex. 1998).  The insurer has the burden of proving that a
policy limitation or exclusion constitutes an avoidance or an affirmative
defense.  Utica Nat’l Ins. Co. v. Am. Indem. Co., 141 S.W.3d 198, 204 (Tex.
2004).

 

Insufficient
Summary Judgment Evidence—“Property Loss” and “Occurrence”

 

          Dallas
National contends that Sabic’s summary judgment motion and evidence were
insufficient as a matter of law to show “property damage” that was caused by an
“occurrence” that took place during the policy period.  Specifically, Dallas National contends that
even though the plaintiffs in the underlying lawsuits artfully plead
negligence, the pleaded facts (even liberally construed in Sabic’s favor)
unambiguously allege intentional and knowing conduct rather than
negligence.  See Nokia, 268 S.W.3d at 495 (factual allegations contained
in plaintiffs’ pleadings control, not alleged cause of action).  According to Dallas National, such conduct
cannot be considered “accidental,” and thus, cannot constitute an “occurrence”
as defined by the policies.  Dallas
National also contends that the pleadings in the underlying lawsuits are
insufficient to demonstrate that “property damage” occurred during the policy
periods because the pleadings do not allege specific dates when the actual
injuries occurred.  Finally, Dallas
National contends that the Florida lawsuits do not allege “property damage”
(actual, physical damage), but rather, damages for loss of consumer confidence,
economic losses, and anticipatory or speculative losses.

          Having
reviewed the pleadings filed in the underlying lawsuits, we conclude the
factual allegations raised here support a duty. 
The pleadings allege both intentional conduct (i.e., the defendants knew
of MTBE’s harmful effects and nevertheless added MBTE to the petroleum products
they manufactured, refined, formulated, distributed, supplied, sold and/or
marketed) and negligence (i.e., the defendants should have known of MTBE’s
harmful effects).  The allegations of
intentional conduct (which are not covered) are not sufficient to preclude a
duty to defend when they are coupled with allegations of negligence (which may
be covered), because if coverage exists “for any portion of a suit, an insurer
must defend the entire suit.”  Stumph, 34 S.W.3d at 728.

          Although
the plaintiffs do not allege specific dates when the MTBE contamination
occurred, they nonetheless allege that MTBE begins to contaminate the
groundwater soon after it is released, and that the contamination is
continuous, persistent, and ongoing. 
Although the plaintiffs allege that the MTBE contamination began well
before 2003, they also allege that new spills and leaks of the petroleum
products containing MTBE occurred “annually” “[a]t all times relevant to the
litigation”—which includes the years immediately preceding the filing of the underlying
lawsuits in March 2007.  Under a liberal
construction of the factual allegations raised in the pleadings, it is apparent
that the plaintiffs allege that new instances of MTBE contamination occurred
between July 2003 and July 2007, as a result of annual spills, leaks, and other
discharges of the petroleum products containing MTBE into the environment.

          Dallas
National further contends that the Florida lawsuits do not allege “property
damage” (actual, physical damage), but rather, damages for loss of consumer
confidence, economic losses, and anticipatory or speculative losses.  A review of the pleadings filed in the
Florida lawsuits reveals that, although the plaintiffs are seeking damages for
such economic losses, they are also seeking compensation for “damages to
Plaintiff’s property, including wells, pumping stations, filters, and
usufructuary rights to the water drawn from the aquifers” caused by the MTBE
contamination.  Specifically, the
plaintiffs allege that the MTBE spreading through the groundwater and water
supply system, including plaintiff’s production wells, gives the water a “foul
taste and odor that renders the water unusable.”  Having done so, the plaintiffs in the Florida
lawsuits have, at a minimum, alleged that the defendants’ conduct resulted in
the “loss of use of tangible property” (i.e.,
groundwater rendered unusable for sale due to MTBE contamination).

          Construed
liberally, the pleadings in the underlying lawsuits allege facts sufficient to
show “property damage” was caused by an “occurrence” that took place between
July 2003 and July 2007.

Known‑Loss
Doctrine

          Dallas National
also argues that it does not have a duty to defend Sabic under the known‑loss
doctrine or the policy’s “expected or intended” coverage exclusion.  The known‑loss doctrine, also known as
the “fortuity doctrine,” bars coverage for a loss the insured already knows to
have occurred, or which is in progress at the inception of the carrier’s
initial policy.  See, e.g., Scottsdale Ins.
Co. v. Travis, 68 S.W.3d 72, 75 (Tex. App.—Dallas 2001, pet. denied).  Specifically, Dallas National contends that, since
the plaintiffs in the underlying lawsuits allege that Sabic’s wrongful conduct
occurred before and after the purchase of the insurance policies, “the known
loss doctrine bars coverage and no duty to defend arises.”

          Dallas
National cites to two cases in supports of its claim that the known‑loss
doctrine bars coverage in the present case: Scottsdale
Ins. Co. v. Travis, 68 S.W.3d 72 (Tex. App.—Dallas 2001, pet. denied) and Two Pesos v. Gulf Ins. Co., 901 S.W.2d
495, 501 (Tex. App.—Houston [14th Dist.] 1995, no writ).  Both Scottsdale
Insurance Co. and Two Pesos,
however, are factually distinguishable from the present case.  The underlying lawsuits in both Scottsdale Insurance Co. and Two Pesos only alleged intentional
torts; neither petition alleged negligence on the part of the insured.  See
Scottsdale Ins. Co., 68 S.W.3d at 74 (petition alleged claims for tortuous interference
with contract, misappropriation of trade secrets, breach of fiduciary duty, and
conversion); Two Pesos, 901 S.W.2d at
498 (petition alleged claim for trade‑dress infringement).  As such, the petitions in both of those cases
alleged only facts that the insured
was engaged in conduct that was not covered or was excluded by the policy.  See
Scottsdale Ins. Co., 68 S.W.3d at 75
(stating that, if petition alleges only
facts not covered or excluded by insurance policy, insurer has no duty to
defend).

          As
previously discussed, the pleadings in the underlying lawsuits allege both
intentional conduct (which is not covered) and negligence (which may be
covered).  Sabic has demonstrated that
the underlying lawsuits allege some facts which may support a duty to defend,
and Dallas National has failed to refute all possible bases for Sabic’s
liability in negligence necessary to defeat the contractual duty to defend.  See
Stumph, 34 S.W.3d at 728.

“Expected
or Intended” Coverage Exclusion

          Dallas
National argues that it does not have a duty to defend Sabic because the
pleadings in the underlying lawsuits allege that Sabic engaged in “intentional
conduct resulting in foreseeable damages” and such allegations fall squarely
within section I(A)(2)(a) which unambiguously precludes coverage for “‘[b]odily
injury’ or ‘property damage’ expected or intended from the standpoint of the
insured.”

          Dallas
National contends that the plaintiffs in the underlying lawsuits allege that
before 2003, the defendants, including Sabic, added MTBE to the petroleum
products that they manufactured, refined, formulated, distributed, supplied,
sold, and/or marketed, and defendants, including Sabic, knew that the addition
of MTBE to those products would cause groundwater contamination—the property
damage alleged in the underlying lawsuits. 
Dallas National further contends that, because the plaintiffs allege
that Sabic’s conduct was intentional, Sabic’s conduct does not qualify as an
accident or “occurrence” covered under the policies.

          Sabic
counters that the plaintiffs in the underlying lawsuits allege both the
intentional conduct Dallas National focuses on and negligent conduct which
would qualify as an accident or “occurrence” covered under the policies.  The plaintiffs in the underlying lawsuits
made multiple claims of what Sabic “should have known” about the deleterious
effects of MTBE, exposing Sabic to the potential of accident liability
resulting from negligence—“occurrences” that fall outside the “expected and
intended” exclusion.

          Despite
allegations of negligence, Dallas National urges this Court to read the
pleadings in the underlying suits as alleging “intentional conduct resulting in
foreseeable damages” that falls within the “expected or intended”
exclusion.  Sabic counters that the
pleadings make factual allegations that would support the insured’s possible
liability for negligent conduct that resulted in unintended and unexpected
harm, which would qualify as accidents or “occurrences” covered under the policies.

          In
support, Dallas National cites to Trinity
Universal Insurance Co. v. Cowan for the proposition that an unexpected or
unintended consequence of an intentional tort is not a covered “occurrence” and
coverage is excluded for such expected or intended injuries.  945 S.W.2d 819, 827–29 (Tex. 1997).  Although the Cowan
court found no “accident” in that case, it declined to hold that deliberate
acts may never constitute an accident, citing the example of the hunter who
deliberately fires a gun at what he believes to be a deer but is actually a
person.  Id. at 828.  Moreover, the duty to defend is not negated by the inclusion of claims
that are not covered; rather, it is triggered by the inclusion of any claims
that might be covered.  Zurich
Am. Ins. Co. v. Nokia, Inc.,
268 S.W.3d 487, 495–96 (Tex. 2008).  Even if some of the claims alleged in the underlying
suits are excluded from coverage by the “expected or intended”
provision, the inclusion of other claims that might be covered triggers the
duty to defend.

Pollution
Exclusion

          Dallas
National also contends that it does not have a duty to defend Sabic in the underlying
suits because the pollution exclusions set forth in each of the policies
exclude coverage for such losses. 
Specifically, Dallas National contends that the allegations in the underlying
lawsuits fall squarely within section I(A)(2)(f)(2)’s pollution exclusion which
unambiguously precludes coverage for “[a]ny loss, cost or expense arising out
of any: . . . (b) Claim or suit by or on behalf of a governmental authority for
damages because of testing for, monitoring, cleaning up, removing, containing,
treating, detoxifying or neutralizing, or in any way responding to, or
assessing the effects of pollutants.” 
According to Dallas National, the plaintiffs in each of the underlying
lawsuits are “governmental authorities” for purposes of the policy exclusion.

          Sabic
counters that the pollution exclusion is ambiguous and therefore, we must adopt
the construction of the clause urged by Sabic, “as long as that construction is
not unreasonable, even if the construction urged by the insurer appears to be
more reasonable or a more accurate reflection of the parties’ intent.”  Evanston
Ins. Co. v. ATOFINA Petrochemicals, Inc., 256 S.W.3d 660, 668 (Tex. 2008)
(quoting Nat’l Union Fire Ins. Co. v.
Hudson Energy Co., 811 S.W.2d 552, 555 (Tex. 1991)).  Sabic argues that section I(A)(2)(f)(2) only
applies to “clean up” costs and not claims for compensatory damages, like the
claims alleged by the plaintiffs in the underlying suits.  Sabic further maintains that the plaintiffs
in the underlying lawsuits are quasi‑municipal water sellers, not
“governmental authorities” under the terms of the pollution exclusion, and urges
this Court to interpret the term “governmental authority” as a state or federal
agency that has some authority to issue and/or enforce environmental
cleanup demands or orders.  Sabic also contends
that, even if the pollution exclusion applies, it is nonetheless covered under
the polices, in light of the exception to the pollution exclusion set forth in
section I(A)(2)(f)(2).

          Section
I(A)(2)(f)(2)(a), (b) of the 2004–2005, 2005–2006, and 2006–2007 policies
provides that coverage is excluded for “any loss, cost or expense” arising out
of any:

(a)  Request, demand, order or statutory or
regulatory requirement that any insured or others test for, monitor, clean up,
remove, contain, treat, detoxify or neutralize, or in any way respond to, or
assess the effects of, “pollutants”; or 

(b)  Claim or “suit” by or on behalf of a
governmental authority for damages because of testing for, monitoring, cleaning
up, removing, containing, treating, detoxifying or neutralizing, or in any way
responding to, or assessing the effects of, “pollutants.”

 

Section I(A)(2)(f)(2) further provides that
“this paragraph does not apply to liability for damages because of ‘property
damage’ that the insured would have in the absence of such request, demand,
order or statutory or regulatory requirement, or such claim or ‘suit’ by or on
behalf of a governmental authority.”[5]

          The term “governmental authority” is undefined
by the policy, and we have not found—and the parties have not directed us
to—any case law analyzing the types of entities classified as “governmental
authorities” for purposes of such exclusions. 
Although Dallas National argues that cities and municipal water
authorities, like the plaintiffs in the underlying lawsuits, have been
construed to be “governmental authorities,” the cases cited by Dallas National
(1) do not involve pollution exclusions contained in commercial general
liability insurance policies,[6]
(2) involve suits by private parties to recover cleanup costs incurred
as result of orders issued by a state environmental protection agency,[7] or
(3) involve suits in which the insured was required to pay corrective action
damages to a state environmental protection agency.[8]

          We
agree with Sabic that the term “government authority” is ambiguous as it is
used in the policies.  Accordingly, we
must adopt Sabic’s interpretation of this policy provision so long as Sabic’s
interpretation is not unreasonable.  See Evanston Ins. Co., 256 S.W.3d at 668.  This is the case even if Dallas National’s
construction “appears to be more reasonable or a more accurate reflection of
the parties’ intent.”  See id. 
We cannot adopt a construction that renders any portion of a policy
meaningless, useless, or inexplicable.  ATOFINA
Petrochemicals, Inc. v. Cont’l Cas. Co., 185 S.W.3d 440, 444 (Tex. 2005)
(per curiam) (rejecting policy construction that would render coverage
illusory); Kelley‑Coppedge, Inc., 980 S.W.2d at 464.

          Here,
Sabic urges this Court to interpret the term “governmental authority” as a
governmental agency that has some authority
to issue and/or enforce environmental cleanup demands or
orders.  Dallas National urges us to
adopt a broader interpretation of the term “governmental authority” which would
essentially encompass any governmental body, regardless of its enforcement
capabilities.  Neither Sabic’s nor Dallas
National’s interpretations render any portion of the policies meaningless,
useless, or inexplicable.  Thus, both are
reasonable interpretations of the policy term. 
With regard to exclusionary clauses such as this one, however, the
insured’s interpretation need not be the only
reasonable interpretation to prevail; it need only be a reasonable interpretation. 
See Evanston Ins. Co., 256
S.W.3d at 668.  Having determined that
Sabic’s narrower interpretation of the term “government authority” is not
unreasonable, we will adopt this interpretation for purposes of our analysis.

          The
plaintiffs in the underlying lawsuits allege that they are “municipal
corporation[s] comprising the habitants within [their] boundaries.”  They further allege that they possess powers
“conferred upon them by law,” without specifying any law, and that they have
“inherent authority” to “preserve or benefit the corporate property,” and to
“maintain actions to recover damages to corporate property.”  The plaintiffs do not allege that they have any
authority to demand or compel the cleanup of such corporate property, or that
any governmental authority has actually requested, demanded, or otherwise
ordered any entity to respond in any way to, or assess the effects of, MTBE in
the environment.  It is apparent from the
pleadings in the underlying lawsuits that the plaintiffs in those cases filed
suit to recover for damages to their property, just as any other property owner
would be entitled to do.  They are not
acting in any type of governmental capacity. 
Accordingly, the plaintiffs are not “government authorities” as
contemplated by the policies, and we therefore conclude that the pollution
exclusions do not preclude Dallas National’s duty to defend Sabic in the underlying
lawsuits.

          Because
we hold the claims in the underlying lawsuits against Sabic are not excluded
from coverage by the pollution exclusions contained in Dallas National’s




 

policies, we need not address whether
such claims fall within the exception to the exclusion contained in the 2004–2007
policies.

Conclusion

          We affirm the trial court’s summary
judgment. 

 

 

 

 

 

                                                          Jim
Sharp

                                                          Justice


 

Panel consists of Justices Jennings, Alcala, and Sharp.











[1]           All of the underlying
lawsuits were consolidated into one multidistrict‑litigation proceeding
presently pending in the Southern District of New York.  The Florida and New York suits raise
virtually identical allegations.





[2]           The plaintiffs in the underlying lawsuits are: City of
Greenlawn Water District; Albertson Water District; Town of Huntington/Dix
Hills Water District; City of Glen Cove Water District; Homosassa Water
District; Tampa Bay Water; The City of Inverness; and the City of Crystal
River.





[3]        See Tex. Civ. Prac. & Rem. Code Ann. § 37.003(a) (West 2009).





[4]           On December 20, 2007, Dallas
National filed its opposition to Sabic’s motion for summary judgment, and Sabic
filed its reply to Dallas National’s objections on January 3, 2008.  Sabic filed its objections to Dallas
National’s motion for summary judgment on January 11, 2008.  On March 7, 2008, Dallas National filed its supplemental
brief in support of its motion for summary judgment, and Sabic responded to the
supplemental brief on March 14, 2008. 





[5]           The 2003–2004
policy does not contain this exception to the pollution exclusion.  Also, unlike the other three policies, the 2003–2004
policy states that coverage is excluded for any loss, cost or expense arising
out of any “request, demand or order.” 





[6]           Baycol, Inc. v. Downtown Dev.
Auth., 315 So. 2d 451, 461 (Fla. 1975)
(recognizing municipality as type of government authority); City of Hollywood v. Yarborough, 274 So. 2d 526, 528 (Fla. 1973) (same); Philbrick v.
City of Miami Beach, 3
So. 2d 144, 145 (Fla. 1941) (considering City of Miami a governmental
authority); Browne v. City of Miami, 948 So. 2d 792, 794 (Fla. Dist. Ct. App. 2006)
(describing City of Miami as “local governmental authority”).





[7]           Nascimento v. Preferred Mut. Ins.
Co., 513 F.3d 273, 274 (1st Cir. 2008) (suit brought
by private party to recover costs associated with cleaning up oil that had
leaked from defendant’s underground storage tank in response to Notice of
Responsibility order issued by Massachusetts Department of Environmental
Protection to plaintiffs and defendant ordering them to clean up spill); Utica
Mut. Ins. Co. v. Weathermark Invs., Inc., 292 F.3d 77, 79 (1st Cir. 2002) (suit brought by private party
in response to Notice of Responsibility order issued by Massachusetts
Department of Environmental Protection ordering party to respond to oil leak).





[8]           Mont. Petroleum Tank Release Bd. v. Crumleys, Inc., 2006 Mont. Dist. LEXIS 38, 1–2 (Mont. Dist. Ct. 2006); Mont. Petroleum Tank Release Bd. v. Great
Am. Alliance Ins., 2006 Mont. Dist. LEXIS 510 (Mont. Dist. Ct. 2006).