BOARD OF PURIFICATION OF WATERS *vs.* TOWN OF BRISTOL.

MARCH 18, 1931.

PRESENT: Stearns, C. J., Rathbun, Sweeney, and Murdock, JJ.

STEARNS, C. J. This is an appeal by the Town of Bristol (G. L., 1923, C. 125, s. 12) from an order of the Board of Purification of Waters made and entered May 29, 1930. After an investigation and a public hearing, the Board

(C. 125, s. 5) made its findings in writing which, in substance, are as follows: (1) That the Town of Bristol has three main sewer outlets which discharge daily into the public waters of the State approximately one and one-quarter million gallons of raw sewage; (2) that, by reason of the discharge of this sewage by the Town of Bristol, the waters of Bristol Harbor are unsafe for bathing; that shellfish in said waters are unfit for human consumption, and that the pollution caused by this sewage constitutes a menace to public health.

The order of the Board directs the town to adopt, use and operate properly some practicable and reasonably available system or means to prevent such pollution (s. 5) and to submit to the Board, on or before October 1, 1930, a plan or statement describing the system or means which the town proposes to adopt.

While this appeal was pending, on the petition of the respondent, after notice to the parties and a hearing, this court ordered that said appeal should operate as a stay of the order of the Board. (s. 12)

The only ground of appeal is that said order is unlawful. The claim is that the Board has no authority to regulate or prohibit the discharge of sewage by said town into the public waters of the State; that by Public Laws, 1901, C. 936, s. 1, as amended by Public Laws, 1929, C. 1451, s. 1, said town is authorized to convey its sewage into tide water. The question thus raised is to be decided on consideration of the language of the statutes above-mentioned.

The evidence of harmful and dangerous pollution by the town, of the waters of the State, is convincing. The respondent offered no evidence in contradiction of the charge of polluting State waters; it relies wholly on the proposition of law.

Chapter 936, *supra*, "An act authorizing the Town of Bristol to establish a system of sewerage in said town," was enacted in 1901; in Section 1, the town was authorized to construct sewers in the highways and to purchase any drains therein built by private parties; "also to convey

sewerage into tide-water." The right thus granted of flowage authorized the continuance of an existing practice of long standing. Chapter 125, G. L , 1923, "Of the Pollution of the Waters of the State," became a law in 1920. The act is a valid exercise of the police power of the State for the protection of the public health and the public welfare. *Board of Purification of Waters* v. *Town of East Providence,* 47 R. I. 431. The act provides for the creation of a Board of Purification of Waters, appointed by the Governor with the advice and consent of the Senate, with authority to regulate or prohibit the pollution of the waters of the State, including therein all tide waters and the inland waters of any stream or pond. The Board is required to make an investigation if it believes that any person is polluting the waters of the State; it is provided (s. 1) that "the term 'person' shall include an individual . . . and a private or municipal corporation."

The act is operative throughout the State with this express exception made in Section 17: "This chapter shall not apply to the sewage of the city of Newport and the town of Jamestown discharged into the waters of the State through their respective sewer outlets." The authority of the General Assembly to make this exception and to limit the area in which the act shall be operative is not questioned. The reason for such a limitation, in the circumstances, is for the legislative not the judicial branch of the government to consider. The fact that the two municipalities last mentioned border on the sea, and that there are no free and common shell fisheries in the adjacent tide waters, may perhaps furnish a reason. Sewage discharged into tide water so near the sea presumably is less dangerous to the public health than when discharged into the waters of Narragansett Bay at a point farther from the sea and nearer the more thickly populated part of the State. But regardless of the wisdom of any such limitation in the act, if the exercise of the police power is proper within a prescribed

area it is no legal objection that it has not been extended over the entire area of the State.

To answer the question now before us requires no construction of the statutes. The meaning of Chapter 125 is clear in this respect. With the exception of Jamestown and Newport, all individuals and corporations, both private and municipal, are forbidden after the passage of this statute to pollute the waters of the State. A special state agency (the Board) is created to regulate or prohibit any such pollution.

From the record it appears that the town has recognized and admitted the need for remedial action. The refusal of the town to take the necessary action and to discontinue the pollution is because of the expense. But, as we decided in the case of the Town of East Providence cited above, this objection is of no avail where the exercise of the police power is appropriate.

By the statutory definition of "person" the act is expressly made applicable to municipal corporations. This clearly includes the Town of Bristol. The authority previously given to the town for the disposal of its sewage is now revoked. This authority was not revived by the amendment of Section 1 of Chapter 936 in Public Laws 1929, Chapter 1451. The purpose and effect of the amendment were to validate an unauthorized appropriation for sewage purposes previously made at a financial town meeting. The addition of a new section for this purpose, to the existing part of Section 1 which contained the clause giving the town authority to convey sewage into tide water, did not reestablish a right which had been so clearly ended.

The order of the Board complained of is sustained.

The parties may present a form of decree to be entered in this appeal on the 30th day of March, 1931.

*Benjamin M. McLyman, Attorney General, Sigmund W. Fischer, Jr., Asst. Attorney General, W. Louis Frost,* for Board.

*Edward L. Leahy,* for Town of Bristol.