PENN-DIXIE CEMENT CORPORATION *v.* CITY OF KINGSPORT.

(*Knoxville,* September Term, 1949.)

Opinion filed December 17, 1949.

PENN, HUNTER, SMITH & DAVIS, of Kingsport, for plaintiff in error.

DODSON & DODSON, and H. MARVIN PARSONS, of Kingsport, for defendant in error.

MR. CHIEF JUSTICE NEIL delivered the opinion of the Court.

We granted *certiorari* in this case because it involved the power of municipalities to enact ordinances for the abatement of smoke and dust issuing from manufacturing plants to the injury of the health of the people. Counsel for the plaintiff in error and the defendant have discussed the case at length both in oral argument and by filing elaborate briefs.

While several assignments of error have been filed with the record the real question for our decision is whether or not Ordinance No. 970 of the City of Kings-

port is authorized by its charter or the general law, and is in violation of the State and Federal Constitution. The Court of Appeals held that it was valid in that it rested upon express legislative authority or was clearly implied.

The plaintiff in error, in its several assignments of error, challenges the correctness of the court's opinion, complaining that the order affirming the trial court is erroneous because (1) "Ordinance No. 970 is not based upon charter powers granted by the General Assembly of Tennessee, or by any general or special legislation", (2) "Ordinance No. 970 is *ultra vires* and not referable to the police power granted the City of Kingsport by Chapter 76 of the Private Acts of the General Assembly for the year 1917, or any amendment thereto", (3) the Ordinance is violative of the State and Federal Constitutions.

There were three separate complaints filed against the plaintiff in error which charged it with a failure to comply with the Ordinance in question. Upon conviction there was an appeal prayed and granted.

The preamble to the Ordinance recites in substance that it is "for the purpose of promoting the health, safety and general welfare of the community"; that "following an extensive study of the problem of smoke, dust and air pollution in the City of Kingsport prior to and at the time the Ordinance was passed, indicated that present conditions are detrimental to the health, safety and general welfare of the community", and that the said Ordinance had been approved by a vote of the citizens in a referendum election. Following the aforesaid preamble the Ordinance provides:

454

"The emission of dense smoke within the City of Kingsport from the smoke stack of any roller, derrick, railroad, tar kettle, internal combustion engine or open fire, or from smoke stack or chimney of any building, round house or premises, except for a period of or periods aggregating nine minutes of density No. 2 smoke as defined by the Ringelmann Chart, or six minutes or less of a density in excess as defined by the Ringelmann Chart, in any one hour at the time when the fire box is being cleaned out or a new fire is being built therein . . . is prohibited, and is hereby declared to be a nuisance and may·be summarily abated by the Director of Air Pollution Control or by any one whom he may duly authorize for such purpose.

. . . . . . .

"Smoke shall be considered dense when equal to or greater density than No. 2 of said chart."

Section 2 of Article XI of the Ordinance provides a penalty for allowing "soot, cinders, dust or gases" to escape from any window or opening in any building in such quantities as to constitute a nuisance.

The authority of the city to enact the Ordinance is challenged on the ground that the General Assembly of Tennessee had not delegated to it the right to enforce police powers which involved the abatement or regulation of the excessive accumulation of smoke and dust. Contention is further made that the city could not by Ordinance declare that to be a nuisance which was in fact not a nuisance, and for this reason Ordinance No. 970 is invalid.

There is no question but that the great weight of authority supports the proposition that a municipality "has no inherent authority to enact ordinances whose

validity and enforcement rests upon general police powers." *Miller* v. *City of Memphis*, 181 Tenn. 15, 178 S. W. 2d 382, 384, 151 A.L.R. 1172, and cases cited. We must therefore look to the charter of the City of Kingsport, Chapter 76, Private Acts of 1917, and the general law for authority to enact Ordinance 970. Under the charter the city was authorized to enact Ordinances as follows:

"To define and prohibit, abate, suppress, prevent, and regulate all acts, practices, conduct, business, occupations, callings, trades, uses of property and all other things whatsoever detrimental or liable to be detrimental to the health, morals, comfort, safety, convenience, or welfare of the inhabitants of the city, and to exercise general police powers.

. . . . . .

"To have and exercise all powers which now or hereafter it would be competent for this charter specifically to enumerate as fully and completely as though said powers were specifically enumerated herein.

"The enumeration of particular powers in this charter is not exclusive of others, nor restrictive of general words or phrases granting powers, nor shall a grant or failure to grant power in this article impair a power granted in any other part of this charter; and whether powers, objects or purposes are expressed conjunctively or disjunctively, they shall be construed so as to permit the city to exercise freely any one or more such powers as to any one or more such objects for any one or more such purposes." Art. 1, Sections 2(22, 24), 3.

Under Subsections 22 and 23 of Section 3528 of the official Code, relating to corporate powers, authority is conferred as follows:

"Regulation of business, callings, etc.—To define, prohibit, abate, suppress, prevent, and regulate all acts, practices, conduct, business, occupations, callings, trades, uses of property and all other things whatsoever detrimental, or liable to be detrimental, to the health, morals, comfort, safety, convenience or welfare of the inhabitants of the city, and to exercise general police powers.

"Limits occupations liable to become a nuisance.—To prescribe limits within which business occupations and practices liable to be nuisances or detrimental to the health, morals, security or general welfare of the people may lawfully be established, conducted or maintained."

The foregoing sections of the Code must be considered as a part of the charter of Kingsport, as well as that of other municipalities. The argument is made by able counsel that these Code Sections are insufficient as authority to enact the Ordinance because of a failure therein to expressly authorize it. In other words it is insisted that the city can pass no Ordinance to control dust or smoke unless the charter of the city, or by general law, expressly declares that the accumulation of smoke and dust is a public nuisance and subject to municipal control. In response to this contention the Court of Appeals said, among other things:

"The emission of dense smoke and dust into the atmosphere in populous cities may be declared a public nuisance and dealt with appropriately, under a general power to define and abate nuisance or to enact ordinances in behalf of the public health and welfare, since the emission of such smoke and dust is an annoyance and an interference with comfort, is destructive of property and under some conditions injurious to health. 37

Am. Jur. Section 295, p. 939; [*Freeman* v. *Inhabitants of Bourne,* 170 Mass. 289, 49 N. E. 435], 39 L.R.A. 511, [*Atlantic City* v. *France,* 75 N.J.L. 910, 70 A. 163], 18 L.R.A., N. S., 156 and [*City of Rochester* v. *Macauley-Fien Milling Co.,* 199 N. Y. 207, 92 N. E. 641], 32 L.R.A., N. S., 554; [*Union Stock Yards Co. of Omaha* v. *Chicago, B. & Q. R. Co.,* 196 U. S. 217, 25 S. Ct. 226, 49 L. Ed. 453], 2 Ann. Cas. 528, [*Bowers* v. *City of Indianapolis,* 169 Ind. 105, 81 N. E. 1097], 13 Ann. Cas. 1201 and [*People* v. *Detroit, Belle Isle and Windsor Ferry Co.,* 187 Mich. 177, 153 N. W. 799], Ann. Cas. 1918B, 173; McQuillin Municipal Corp. (2d) Section 962, p. 167.

"In Vol. 3 of McQuillin on Municipal Corporations, (2d Ed.), it is said:

" 'It is generally recognized that whatever is injurious to human life or detrimental to health, or whatever deprives the inhabitants of pure, uncontaminated and inoffensive air, constitutes a public nuisance. The knowledge is common that smoke discharged from the numerous establishments in crowded urban centers, particularly in industrial and manufacturing communities, is carried over a wide territory, and that when dense, the falling soot renders the air disagreeable and injurious to breathe, damages clothing, textiles and various other articles in shops, stores and residences and otherwise produces inconvenience and annoyance to the inhabitants. Accordingly, the sound judicial view is that the emission or discharge of dense smoke in populous communities is a public nuisance, and may be regulated by virtue of the police power.' Section 974, p. 205.

"It seems to us that the ordinance in question comes within the general or implied police powers as being conducive to the public health, morals, safety, convenience

and comfort of the public, and advances the general welfare of the city of Kingsport.''

We cannot agree with counsel that because the city charter and general laws, relating to corporate authority, omit specific reference to *dust or smoke* as constituting a nuisance that the municipality is powerless to control it as a means of safeguarding the health and safety of the public. Moreover we do not concede that the City of Kingsport acted without legislative authority. The above quotation from McQuillin on Municipal Corporations by the Court of Appeals, and other authorities cited, supports the city's contention that the Ordinance is valid under legislative authority to enact ordinances designed to promote health, morals, and safety, and to declare that which is detrimental thereto to be a public nuisance. In addition to the foregoing authority it was held in *City of Rochester* v. *Macauley-Fien Milling Co.*, 199 N. Y. 207, 92 N. E. 641, 32 L.R.A., N. S., 554 as follows:

''An ordinance prescribing the density of smoke which shall be allowed to issue from stationary stacks within the limits of a city is within statutory authority to enact ordinances for the preservation of health, for the safety and welfare of the inhabitants, and for the protection and security of their property.''

We think it would be well nigh impossible for the legislature to specifically deal with every local condition that might be detrimental to public health and safety. Much liberality therefore must be given to municipal authorities to deal with this subject. ''The necessity and advisability of the ordinance is for the legislative power to determine. The presumption is in favor of the ordinance.'' *Fifth Ave. Coach Co.* v. *City of New*

*York,* 194 N. Y. 19, 86 N. E. 824, 827, 21 L.R.A., N. S., 744, 16 Ann. Cas. 695; *Miller* v. *City of Memphis, supra.*

The plaintiff in error complains that certain cases cited by the Court of Appeals in support of municipal authority to enact the present Ordinance have no application because either the charters of the respective cities, or under general law, conferred express authority, whereas in the instant case there is no authority. The case of *Miller* v. *City of Memphis, supra,* involved an ordinance to tax "juke boxes": *Spencer-Sturla Co.* v. *City of Memphis,* 155 Tenn. 70, 290 S. W. 608, involved a zoning regulation: *Porter* v. *City of Paris,* 184 Tenn. 555, 201 S. W. 2d 688, was a parking meter ordinance: in *Chat-tanooga* v. *Norman,* 92 Tenn. 73, 20 S. W. 417, the ordinance prohibited stock from running at large, declaring the same to be a nuisance. The opinions in these cases are sound in principle and we find nothing in them which tends to support the theory of the plaintiff in error that every ordinance, designed to promote public health and safety, must rest upon specific legislative authority. We think it would be a superhuman task, in fact beyond the ken of mortal man, for the legislature to specifically point out every condition that might be regarded as detrimental to public health and safety. Moreover, that which is a nuisance in some parts of a city may not be elsewhere, and it may not be anywhere and it may be everywhere. The condition complained of as a hazard to health may also be purely imaginary. But this Court can and does take judicial cognizance of the fact that when the air is laden with a heavy cloud of smoke and dust that such a condition constitutes a nuisance and is detrimental to the health and safety of the public. When therefore the legislature confers upon a municipality authority to

safeguard the public health, it is wholly unnecessary that the charter or general law should go further and declare that smoke and dust are detrimental to health. Everbody knows that it is. In *City of Rochester* v. *Macauley-Fien Milling Co., supra* [199 N. Y. 207, 92 N. E. 643], it was said: ". . . it is a matter of common knowledge of which the courts may take judicial notice that *some injury must result* from substance-laden smoke pervading the atmosphere in which persons and property necessarily remain."

 We are in full accord with the following citation of authority by counsel for the plaintiff in error:

"No power can be implied except such as are essential to the object and purpose of the municipal corporation created and established. *City of Buffalo* v. *Stevenson*, 207 N. Y. 258, 100 N. E. 798; *City of Rockford* v. *Nolan*, 316 Ill. 60 146 N. E. 564; *Jeffery* v. *Smith*, 63 Ore. 514, 128 P. 822." We can conceive of no higher duty to be performed by a municipality than that of conserving the health of its inhabitants. The public welfare requires that conditions which are detrimental to health should be abated, or speedily regulated, without waiting for the legislature to declare by special act that such regulation is directly authorized. The health of the community, menaced by that which is commonly known to everyone as injurious, cannot always be made to wait upon the slow process of legislation. The law has never been so inconsiderate of the public welfare as to impose upon a municipality the necessity of obtaining specific legislative authority before it can cope with every condition which may be detrimental to the health of its people. If a municipality must have specific authority, either by a charter provision or under some general law, to enable it to deal

with every cause or condition that is detrimental to public health the legislature would be compelled to adopt as many enabling acts as there are conditions thought to be dangerous to the community.

In the case of *Miller* v. *City of Memphis, supra* [181 Tenn. 15, 178 S. W. 2d 384], and other cases cited, we made the observation that "a municipality has *no inherent authority* to enact ordinances whose validity and enforcement rests upon general police powers." The foregoing is a correct statement of the general rule. But there are exceptions. In fact counsel for the petitioner concedes that the power *can be implied* where "it is essential to the object and purpose of a municipal corporation".

In Vol. 62 C. J. S., Section 132, page 277, under "Municipal Corporations" it is said: "The police power extends to promotion of public safety and general welfare *by regulating all things* harmful to the comfort, safety, and welfare of the public." (Italics ours.)

Again under Section 133, p. 279, it is said: "Health or sanitary powers may not only be expressly granted, *or implied therefrom,* but they also have been characterized *as inherent in a municipal corporation,* and are favored by the courts." (Italics ours.)

In 37 Am. Jur., Section 288, under "Municipal Corporations", p. 927, it is said:

"Ordinances to preserve the public health have been liberally construed, and the authorities have gone to a great length in enumerating the implied powers of municipalities to enact laws to protect the community from infectious and contagious diseases, from bad water, against nuisances injurious to health, and noxious odors and gases. Inasmuch as the preservation of the public

health and the safety of the inhabitants is one of the chief purposes of local government, all reasonable ordinances in this direction have been sustained.''

 There is no merit in the contention that the property of the plaintiff in error is being taken or destroyed by the Ordinance without due process of law and hence in violation of the State and Federal Constitutions. We cannot assume that the Ordinance will be arbitrarily and capriciously enforced. On the contrary the presumption is indulged that it will be done in a reasonable manner.

The assignments of error are overruled and the judgment of the Court of Appeals affirmed.

All concur.