233 So.2d 7 (1970)
CITY OF MIAMI, a Municipal Corporation of the State of Florida, Appellant,
v.
CITY OF CORAL GABLES, a Municipal Corporation of the State of Florida, et al., Appellees.
No. 69-1006.
District Court of Appeal of Florida, Third District.
March 10, 1970.
As Corrected on Rehearing April 10, 1970.
*8 Alan H. Rothstein, City Atty., and Jack R. Rice, Jr., and John S. Lloyd, Asst. City Attys., for appellant.
Charles H. Spooner, City Atty., Carr & Warren, Miami, for appellees.
Before BARKDULL, HENDRY and SWANN, JJ.
HENDRY, Judge.
The appellant was defendant below, in an action brought by the City of Coral Gables and twenty individual residents of that city to enjoin the operation of an incinerator located in Coconut Grove, which is owned and operated by the appellant. The circuit court rendered its findings, opinion and judgment granting the injunctive relief sought. The chancellor found as follows:
"Considering all of the evidence presented and arguments presented by able counsel for the respective parties, the Court finds:
"1. That the equities are with the plaintiffs and against the defendant.
* * * * * *
"4. That the operation of the City of Miami Incinerator No. 2, located in Coconut Grove, constitutes both a public and private nuisance; and that continued operation of the incinerator would constitute a continuing nuisance to the plaintiffs.
"5. That the plaintiffs are entitled to the entry of an injunction enjoining and prohibiting the present operation of the said incinerator."
The chancellor thus ordered that:
"* * * [T]he City of Miami be and it is hereby prohibited and enjoined from operating its Incinerator No. 2 located in Coconut Grove.
"2. That the Court hereby defers the operation of such injunctive order for a period of 45 days during which time the defendant City of Miami, may present to this Court a plan whereby the incinerator can be so improved as to overcome the deleterious conditions which presently exist. * * *"
The City of Miami immediately filed its notice of appeal in case number 69-1006. In that case, the city has taken a plenary appeal, presenting the issues of law which it contends should have precluded the injunction by the circuit court. However, while that appeal was pending, forty-five days elapsed and the chancellor entered a rule to show cause as to whether the City of Miami was in contempt for failure to present an ameliorative plan within that period of time. A hearing was held on the rule, and the chancellor indicated to counsel that he would find the city in contempt for failure to file the plan. Before the actual contempt order had been entered, however, the city filed in this court for writ of prohibition addressed to the chancellor, such case being number 70-104.
Nevertheless, on January 27, 1970, the chancellor entered his order of contempt from which the city has taken an interlocutory appeal in case number 70-110. Due to the nature of the relief sought in each of these cases, they have been consolidated for appellate purposes.
*9 We shall treat the basic issues of law presented in the plenary appeal first. The appellant raises the doctrine of res judicata, contending that a similar action filed in 1962 by the City of Coral Gables for injunctive relief, which was dismissed with prejudice, should have acted to bar the instant litigation under the aforementioned doctrine. This contention is without merit. The instant case presented the issue as to whether or not the incinerator constituted a nuisance in 1967, when the suit was filed, and in 1969, when it was tried. The determination made in 1962 has no bearing on this case. Hialeah Race Course, Inc. v. Gulfstream Park Racing Association, Inc., Fla.App. 1968, 210 So.2d 750.
As its second point on appeal, the City of Miami contends that the evidence presented was not sufficient to sustain the final judgment and findings. The evidence presented was, in our opinion, substantial and competent. The chemical and physical tests conducted by the expert witnesses, engineering firms and officers of the Dade County Pollution Control Board amply sustained the findings of the chancellor. At the heart of the appellant's argument is its position that "* * * the minor form of pollutants which may be emitted into the air by the stack of defendant's incinerator is a relatively insignificant factor when compared to the other forms of pollution which affect the air and water of Dade County." Though it is unfortunately true that Dade County is the victim of environmental abuse from sources other than the Coconut Grove incinerator, this fact does not mitigate the offenses committed by this particular party. The underlying principle supporting the law of nuisance has been succinctly stated in the case of Jones v. Trawicks, Fla. 1953, 75 So.2d 785, 50 A.L.R.2d 1319, wherein the court stated:
"This court recognizes that the law of private nuisance is bottomed on the fundamental rule that every person should use his own property as not to injure that of another * * *
"Anything which annoys or disturbs one in the free use, possession, or enjoyment of his property, or which renders its ordinary use or occupation physically uncomfortable, is a `nuisance' and may be restrained."
See also cases collected in Annot., 52 A.L.R.2d 1134 (1957); Annot., 78 A.L.R.2d 1305 (1961); Annot. 2 A.L.R.3d 1372 (1965).
No doubt the instant litigation is representative of an entire assault by the people of this nation in response to the "crimes against the environment" which have been perpetrated by the users of our amassed technologies.[1] Recognition of the public's right to pure air, soil, and water has been forthcoming from a vast segment of the governmental agencies entrusted to protect these interests for our country's people, and the legal community is now mobilizing itself to pursue the avenues of relief available.[2] In all likelihood, the lion's *10 share of these efforts to secure a pollution-free environment will be heard by the many courts existing in the federal and state jurisprudential systems, and it appears to us that the appellant's position on this point, if accepted, would lodge a perpetual barrier against any subsequent pursuit of legal remedy by parties aggrieved in the future.
The record on appeal contains testimony from citizens participating in this law suit as to smoke, odors, ash and soot falling on their properties. They further testified as to the inconvenience of being awakened by noxious smells from the smoke and burning garbage being emitted by the incinerator. The evidence shows that ashes and other particulate matter fell upon their persons and property, and some expressed having experienced physical discomfort therefrom. The numerous tests conducted, treated infra, graphically demonstrated the degree of severity with which this incinerator was violating their property rights or their persons. We commend the chancellor when he stated in his final judgment:
"This court will not stand idly by while citizens are required to endure the existence of a nuisance until such time as those responsible for remedying it discharge their responsibilities.
"* * * [The Court finds] that the operation of the City of Miami's incinerator No. 2, located in Coconut Grove constitutes both a public and private nuisance; and that continued operation of the incinerator would constitute a continuing nuisance to the plaintiffs."
The appellants also contend that the chancellor erred when he admitted into evidence Metropolitan Dade County Code Chapter 24, which is the Dade County Pollution Control Ordinance. The City of Miami contends that certain provisions of that ordinance are unreasonable because they bear no reasonable relationship to health of the citizens of the county which it purports to protect.[3] The chancellor, in *11 commenting upon that ordinance, stated in his judgment that:
"[T]his court does not hold that proof of the violation of the Dade County Code or of any ordinance, standing alone, would necessarily be sufficient to establish the existence of a nuisance, but is evidence which can be considered by the court in determining whether the nuisance does exist. See Philbrick v. City of Miami Beach, Fla. [1941], [147 Fla. 538] 3 So.2d 144."
Thus, we initially note that the court properly construed the weight to be given as to this particular evidence, and the constitutional attack posed by the appellant herein would not, in view of the additional corroborating evidence demonstrated by the record, be grounds for reversal. Nevertheless, we should set to rest any doubts about the constitutionality of the cited sections of the Dade County Code, Footnote 3, supra, and hereby hold that there is a definite relationship between the public health and welfare being protected and the ordinance regulating pollutant discharges into the atmosphere. Moreover, the standards setting forth the maximum allowable emission of smoke and particulate matter are easily ascertainable from the language of the code. The use of the Ringelmann chart, as provided for in § 24-15 of the Code, has been specifically litigated and approved in other jurisdictions. Sittner v. Seattle, 1963, 62 Wash.2d 834, 384 P.2d 859; People v. International Steel Corporation, 1951, 102 Cal. App.2d Supp. 935, 226 P.2d 587; Board of Health of Tp. of Weehawken, etc. v. New York Central Railroad Co., 1950, 4 N.J. 293, 72 A.2d 511; Penn-Dixie Cement Corporation v. City of Kingsport, 1949, 189 Tenn. 450, 225 S.W.2d 270. We therefore find sections 24-3, 24-15 and 24-21 of the Dade County Code to be constitutional.
The appellant next argues that the chancellor failed to consider certain evidence relating to the efficiency of operation of the incinerator, and therefore erred *12 in his ultimate finding, and that such evidence would have balanced the equities in this case to have yielded a different outcome. The evidence which appellant had sought to have admitted first attempted to demonstrate the proportionate amount of pollution damage being done by the incinerator in comparison to the greater pollution caused by automobile, other waste disposal, and industrial operations in the county. Moreover, the City of Miami also wished the court to consider evidence pertaining to "* * * the relatively small inconvenience to the small number of complaining citizens of Coral Gables versus the inconvenience of gigantic proportions to the great number of citizens served by the incinerator * * *." We find that the court properly followed and applied the principles of law as they were stated in the leading case of the State ex rel. Harris v. Lakeland, 141 Fla. 795, 193 So. 826, wherein the court stated:
"If a public nuisance is conclusively proven, the responsibility will be on the city to remove it. This it may do by modernizing its present sewage disposal facilities or by providing additional ones. It cannot plead poverty or inability to remove a nuisance created by it that has become deleterious to the public health."
Finally the appellant contends that the court admitted into evidence certain chemical and physical tests which were conducted in such a manner as to be incompetent and unreliable. We have reviewed the record as to this point and find the appellant's contention to be without merit.
In conclusion, as to case 69-1006, we hold that the chancellor conducted an admirably proper trial of the issues involved herein, which necessarily included technical evidence relating to the chemical and physical properties of the particulate and gas emissions of polluting substances into the air. The relief granted is therefore affirmed.
The City of Miami, in case 70-104, has taken an interlocutory appeal from the chancellor's finding of contempt. We find its position to be meritorious, since the notice of appeal, having been filed from the final order in case 69-1006, served to stay the beginning of the 45-day period until such time as that appeal had been decided by this court. See City of Miami Beach v. Lansburgh, Fla.App. 1969, 217 So.2d 348; Florida Appellate Rule 5.12, 32 F.S.A. (1967). Therefore, the order finding the City of Miami in contempt is hereby reversed, and the appellant is ordered to begin its compliance with the order of the chancellor when the mandate from this court reaches the Clerk of the Circuit Court. This holding in no way affects the requirement of the chancellor that the City of Miami present the court with a plan whereby this incinerator can be so improved as to overcome the deleterious condition which presently exists.
In view of the above holdings, case number 70-110, a petition for a writ of prohibition which was considered as a constitutional stay writ, is therefore moot and need not be dealt with.
For the reasons stated, we hereby affirm the final judgment and reverse the order of contempt.
It is so ordered.
NOTES
[1] Recent periodicals reflect the growing alarm in this area. E.g.: Air Pollution, Pre-emption, Local Problems and the Constitution, 10 Arizona L.R. 97 (1968); Jordan: Recent Developments in International Environmental Pollution Control, 15 McGill L.J. 279 (1969); Oil Pollution of the Sea, 10 Harvard International Law J. 316 (1969); Schmitz: Pollution, Science, and Damage Awards, 18 Cleveland State L.R. 456 (1969); Symposium: Air Pollution Control, 33 Law & Contemporary Problems 195 (1968); Symposium: Air Pollution, 1968 Wash.Univ.L.Q. 205. A significant development is also indicated in the President's proposed anti-pollution program, see The Miami Herald, Feb. 11, 1970, p. 1, col. 2.
[2] See: Bellis, Kolsby, and Wolf: Legal Approach to Industrial Pollution, 40 Penn.Bar Ass'n Q 96 (1968); Crowley and Verleger: Air Pollution, Water Pollution, Industrial Cooperation, and the Antitrust Laws, 4 Land & Water L.R. 475 (1969); Delogu: Legal Aspects of Air Pollution Control and Proposed State Legislation, 1969 Wisconsin L.R. 884; Role of Private Nuisance Law in the Control of Air Pollution, 10 Arizona L.R. 107 (1968); Symposium: Can Law Reclaim Man's Environment?, 5 Trial Magazine 10-28 (Aug. 1969); Tyler, Methods for State Level Enforcement of Air and Water Pollution Laws, 31 Texas Bar J. 905 (1968); Wright: Some Aspects of the Use of Corrective Taxes for Controlling Air Pollution Emissions, 9 Natural Resources J. 63 (Jan. 1969).
[3] "Sec. 24-3. Definitions.

"In construing the provisions of this chapter, where the context will permit and no definition is provided herein, the definitions provided in Chapter 67-436, Laws of Florida, 1967, and in rules and regulations promulgated thereunder shall apply. The following words and phrases when used in this chapter shall have the meanings ascribed to them in this section:
* * * * *
"(2) AIR CONTAMINANTS shall mean a particulate, gas or odor, including but not limited to, smoke, charred paper, dust, soot, grime, carbon or any particulate matter, or irritating, malodorous or noxious acids, fumes or gases, or any combination thereof, but shall not include uncombined water vapor.
"(3) AIR POLLUTION shall be construed to mean the presence in the outdoor atmosphere of one or more air contaminants or combination thereof in such quantities and of such duration which are injurious to human, plant or animal life, or property, or which unreasonably interfere with the comfortable enjoyment of life or property, or the conduct of business.
* * * * *
"(14) NUISANCE shall mean and include the use of any property, facilities, equipment, processes, products or compounds, or the commission of any acts, that cause or materially contribute to:
"(a) The emission into the outdoor air of dust, fume, gas, mist, odor, smoke or vapor, or any combination thereof, of a character and in a quantity as to be detectable by a considerable number of persons or the public, at any point beyond the property limits of the premises occupied or used by the person responsible for the source thereof, so as to interfere with their health, repose of safety, or cause severe annoyance or discomfort, or tends to lessen normal food and water intake, or produces irritation of the upper respiratory tract, or produces symptoms of nausea, or is offensive or objectionable to normal persons because of inherent chemical or physical properties, or causes injury or damage to real property, personal property or human, animal or plant life of any kind, or which interferes with normal conduct of business, or is detrimental or harmful to the health, comfort, living conditions, welfare and safety of the inhabitants of this county.
* * * * *
"(c) Any violation of provisions of this chapter which becomes detrimental to health or threatens danger to the safety of persons or property, or gives offense to, is injurious to, or endangers the public health and welfare, or prevents the reasonable and comfortable use and enjoyment of property by any considerable number of the public.
* * * * *
"Sec. 24-15. Prohibitions against air pollution.
"No person shall cause, let, permit, suffer or allow to be discharged into the atmosphere from any single source of emission whatsoever any air contaminant for more than three (3) minutes in any hour at the emission point which is:
"(a) Equal to or greater than the density that is designated as Number two on the Ringelmann chart as published in the U.S. Bureau of Mines Information Circular No. 7718. Other standards may be used to measure smoke density which give results equivalent or comparable to those obtained using said chart, if such standards of measurement are approved by and acceptable to the pollution control officer.
"(b) Of such opacity as to obscure an observer's view to a degree equal to or greater than does air contaminants described in the introductory paragraph. (Ord. No. 67-95, § 1, 12-19-67)
* * * * *
Sec. 24-21. Incinerator burning.
No person shall burn any combustible refuse in any incinerator in Dade County except in a multi-chamber incinerator as described in this chapter, or in equipment found by the pollution control officer in advance of such use to be equally effective for the purpose of air pollution control as an approved multichamber incinerator. The maximum discharge of particulate matter shall not exceed 0.2 grains per Standard Cubic Foot of Dry Gas corrected to fifty per cent (50%) excess air. (Ord. No. 67-95, § 1, 12-19-67)"