**IOWA WATER POLLUTION CONTROL COMMISSION, Appellee,**

v.

**TOWN OF PATON, Appellant.**

No. 55600.

Supreme Court of Iowa.

May 23, 1973.

Richard C. Turner, Atty. Gen., Clifford E. Peterson, and James C. Davis, Asst. Attys. Gen., for appellee.

Cudahy, Wilcox & Magee, Jefferson, for appellant.

Heard before MOORE, C. J., and MASON, REES, UHLENHOPP and McCORMICK, JJ.

McCORMICK, Justice.

This is an appeal from a trial court order under § 455B.24, The Code, 1966, compelling defendant Town of Paton to comply with an order of the plaintiff Iowa Water Pollution Control Commission to change its sewage system. We modify in part, affirm in part, and remand.

All proceedings involved in this appeal were under chapter 455B, The Code, 1966, consisting of §§ 455B.1 to 455B.28. The provisions of that chapter were repealed by Acts 1972 (64 G.A.) ch. 1119 §§ 112, 113, effective January 1, 1973. Provisions of chapter 455B, The Code, 1973, establishing the Department of Environmental Quality, were enacted by Acts (64 G.A.) ch. 1119 §§ 1 to 108, effective January 1, 1973. Provisions of the prior statute involved in this case are nearly identical to provisions of the present statute. For convenience, statutes controlling in this case will be referred to in the present tense even where repealed. All references are to the 1966 Code unless otherwise indicated.

A state department of health engineer made two surveys and reports to the plaintiff commission concerning pollution of Butrick Creek which runs along the south and east edge of Paton. The first report was made August 17, 1967, and the second June 11, 1968. They showed the town used five waste disposal lines draining into the creek. They consisted of one 22 inch county drain line and four smaller tile lines. Pollution conditions were alleged to be worse in the second survey than in the first. Water being discharged from the large line was described as discolored and odorous. The bottom of the creek was back and in a sludgy condition for about 50 feet downstream of the outlet. Similar conditions existed at two of the other tile outlets.

The 1968 report concluded the town was in violation of two standards in commission regulations. One provides, "No municipality shall discharge any sewage into the waters of the state without effective removal of floatable and settleable solids as a minimum degree of treatment." The second requires all surface waters to be "[f]ree from substances attributable to municipal, industrial or other discharges that

will settle to form putrescent or otherwise objectionable sludge deposits." See §§ 1.-1(1), 1.2(2)(a), 1971 Iowa Departmental Rules at 954.

After receiving the second report the commission started negotiations with the Paton town council. These negotiations culminated in a consent order agreed to by the town on August 8, 1968, through town council resolution, and adopted by the commission on September 6, 1968, through commission action. Since that order is central to the issues on this appeal it is here set out in full:

BEFORE THE IOWA WATER POLLUTION
CONTROL COMMISSION

| IN THE MATTER OF POLLUTION OF BUTRICK CREEK, LOCATED NEAR THE TOWN OF PATON, IOWA | CONSENT ORDER THE TOWN OF PATON PATON, IOWA |
| --- | --- |

TO: THE TOWN OF PATON

WHEREAS, pursuant to authority of Section 10, Chapter 455B, 1966 Code of Iowa, an investigation of pollution of Butrick Creek, near the Town of Paton, Iowa was conducted by the Iowa State Department of Health. As a result of the investigation, the Department prepared and published a report on "Sewage Disposal for the Town of Paton" dated June 6, 1968. The matter came before the Iowa Water Pollution Control Commission on June 27, 1968, by authority of Section 12, Chapter 455B, 1966 Code of Iowa. It is agreed that the aforesaid report entitled "Sewage Disposal, for the Town of Paton" generally describes the conditions as they exist.

IT IS HEREBY ORDERED that the Town of Paton comply with the following provisions and time schedule for improvements:

1. That the Town of Paton submit to the Iowa State Department of Health, a preliminary engineering report outlining required sewage treatment facilities by April 1, 1969.

2. That the Town of Paton will submit to the Iowa State Department of Health, the final plans and specifications for the required sewage treatment facilities by January 1, 1970.

3. That the Town of Paton will award a contract or contracts, and initiate the construction of the required sewage treatment facilities by August 1, 1970.

4. That the Town of Paton will submit to the Iowa State Department of Health, sixty (60) day progress reports. The first report will be due October 1, 1968.

This Order is subject to such further orders or modifications by the Commission as may be required.

IT IS FURTHER ORDERED that the Mayor and Council of the Town of Paton, individually or severally, or their qualified successors, be charged with the duty of complying with this Order.

FURTHER, the Town of Paton consents to the isuance of this Order, as provided by Section 17 of Chapter 455B, 1966 Code of Iowa, with the aforesaid provisions and time schedule.

Dated this 8th day
of August, 1968

THE TOWN OF PATON
As authorized and directed
by its TOWN COUNCIL,

By /s/ Gerald E. Linn
    Mayor Pro-Tem

Dated this 6th day
of Sept., 1968

/s/ Robert R. Buckmaster
Robert R. Buckmaster,
Chairman
IOWA WATER POLLUTION
CONTROL COMMISSION

———————

The present case arose from a contempt proceeding commenced by the commission under § 455B.24, The Code, 1966. The commission certified the town's alleged disobedience of the order to district court and requested an order compelling the town to comply with it. The commission asserted the town failed to submit final plans and specifications for sewage treatment facilities, to award contracts or initiate construction, and file progress reports, as required by the order. The case was tried February 2, 1971, and on December 17, 1971, trial court entered its decree ordering the town to comply with the commission's order pursuant to a new time schedule which the court fixed. The town was ordered by the court to submit final plans and specifications for sewage treatment facilities to the commission by August 15, 1972, to award contracts and initiate construction of the required facilities by April 15, 1973, and to submit 60 day progress reports commencing February 15, 1972.

Six principal questions are presented by this appeal. They are: (1) What is our scope of review? (2) Does the statute permit consent orders to be entered? (3) Assuming consent orders may be entered, did the order in this case exceed the au-

thority of either the town or the commission? (4) Was the order unreasonable because of the financial burden imposed on the town? (5) Was this action prematurely brought? (6) What should be done with respect to trial court's decree?

■ I. *Scope of review.* Included in the commission's petition asking for an order compelling the town to comply with the consent order is a general prayer for equitable relief. The action was tried, submitted, decided, and appealed as if it was equitable in nature. In such circumstances we treat it as equitable and our review is *de novo*. Davenport Osteopathic Hosp. Ass'n v. Hosp. Serv., 261 Iowa 247, 253, 154 N.W.2d 153, 157 (1967).

■ We are convinced, however, that § 455B.24, The Code, 1966, which is the same as § 455B.44, The Code, 1973, contemplates a proceeding at law. In relevant part the statute provides:

"Contempt—penalty. Failure to obey any order issued under the provisions of this chapter made by the commission with reference to matters pertaining to the pollution of waters of the state shall constitute prima-facie evidence of contempt. In such event the commission

may certify to the district court of the county in which such alleged disobedience occurred the fact of such failure. The district court after notice, as prescribed by the court, to the parties in interest shall then proceed to hear the matter and if it finds that the order was lawful and reasonable it shall order the party to comply with the order. If the person fails to comply with the court order, he shall be punished for contempt."

There is no provision for equity jurisdiction. The statute creates a special action triable to the court by ordinary proceedings. § 611.6, The Code.

II. *Authority for consent orders.* The town argues the consent order is void because such orders are not authorized in chapter 455B, The Code, 1966, and therefore cannot be made. Its position is that a hearing under §§ 455B.15–455B.17 is a condition precedent to entry of any binding commission order.

The commission's consent orders are like consent judgments. "Judgments by consent are contractual in nature and are, in effect, contracts of parties acknowledged in court. They do not result from a judicial determination of the rights of the parties or the merits of the case, but are merely recitals of their agreements. Judgments by consent, nevertheless, are entered by sanction and order of the court, exercising a judicial function and power, and therefore are not to be treated as mere contracts, but, to the contrary, as adverse judgments." 47 Am.Jur.2d Judgments § 1082 at 140; see also City of Chariton v. J. C. Blunk Construction Company, 253 Iowa 805, 112 N.W.2d 829 (1962).

■ The commission is granted express authority to enter orders directing polluters to cease the practice causing pollution or to change the method of discharging wastes in compliance with its standards to eliminate the polluting effects of such practice. § 455B.17(3), The Code, 1966. The commission is also expressly directed

before ordering a hearing to "* * * notify the alleged offender and by informal negotiation attempt to resolve the problem * * *." Only after failure to resolve the problem in that manner "within a reasonable period of time" is the commission authorized to order a hearing. § 455B.12, The Code, 1966.

By necessary and fair implication the commission may enter agreements with offenders to resolve pollution problems. It logically follows that the commission is authorized to have such agreements recognized by entry of a commission order. Although the commission is not a court, its administrative process is designed to function similarly. Consent orders entered by the commission are entered on the same premise as consent judgments entered by a court. Clearly the commission, like a court, has as much power to enter orders where hearing is waived as where hearing is held.

We believe alleged polluters have a right to admit culpability, negotiate an abatement agreement, waive hearing, and permit entry of an order reciting the agreement. The commission has authority to enter consent orders.

III. *Authority for the consent order in this case.* The town maintains that even if consent orders are authorized, the order in this case exceeded the scope of authority of the commission and the town.

■ The town contends the commission is limited to entering orders requiring polluters to cease polluting and may not order installation of new sewage treatment facilities. This contention ignores the plain language of § 455B.17(3) that, as an alternative to ordering the polluting practice ended, "* * * the commission upon the recommendation of the state department of health may order a change in the method of discharging sewage * * * so that the same will not result in pollution and the method shall be in compliance with the effluent or water quality standards adopted

by the commission." See also § 455B.9(6), The Code, 1966. In this case there was a specific department of health recommendation in the June 1968 report: "It is * * * specifically recommended that the Town of Paton retain a consulting engineer and initiate an immediate program of sewage collection and treatment." At the time of the commission's order § 135.11(7), The Code, 1966, was also in effect, (though now repealed). It empowered the department of health to direct the method of installation and operation of municipal sewer systems. The town did not have a sewage treatment facility, but it was permitting sewage to run through its tile lines into Butrick Creek. This certainly was a "method of discharging sewage" by the town which could be ordered changed. We are not confronted with a situation where the town does not have at least the semblance of a collector system. Cf. Hines and Schantz, Improving Water Quality Regulation in Iowa, 57 Iowa L.Rev. 231 at 333. These sections are authority for requiring the town to install a sewage treatment facility.

Similarly, there is ample authority for ordering submission of engineering plans for the proposed facility. Section 455B.9(5), The Code, 1966, expressly authorizes the commission "[t]o require plans and specifications for disposal systems or any part thereof to be submitted to the state department of health for approval or disapproval."

The commission is also authorized to set a time schedule. Where a change in method of discharging sewage is ordered, "* * * unless such practice is rendering such water dangerous to the public health, a reasonable time shall be granted to the offender in which to put in use the method ordered." § 455B.17(4), The Code, 1966.

Accordingly, assuming the report of the department of health as to pollution of Butrick Creek was true, as admitted by the town when it entered the consent order

and by its engineer in his testimony at trial, the commission did not exceed its authority when it ordered the town to do what the town agreed it should do in this case.

■ As to its own authority, the town contends its governing body lacked power to enter the consent order requiring installation of a sewage treatment facility. It relies on the Dillon Rule, then applicable to Iowa municipalities, and on its view the town's governing body lacked statutory power to commit the community to installation of a sewage treatment facility.

The municipal home rule amendment was added to Article III of the Iowa Constitution on November 5, 1968. The town argues that under the Dillon Rule previously in effect it would not have authority to submit to a consent order requiring installation of a municipal sewage system. The Dillon Rule is explained in Richardson v. City of Jefferson, 257 Iowa 709, 134 N.W.2d 528 (1965). It recognized municipalities have only powers expressly given by the legislature, those arising therefrom by fair implication, and those necessary to carry out express or implied powers. Cf. Wilson v. City of Council Bluffs, 253 Iowa 162, 110 N.W.2d 569 (1961).

Municipalities are expressly empowered to provide sewage systems by § 368.26(2), The Code, 1966. As previously noted, the state department of health, of which the commission is a division, is empowered to direct the method of installation and operation of municipal sewer systems and the commission is authorized to enter orders requiring municipalities to change their methods of sewage disposal to comply with state standards.

These statutory provisions give municipalities not only the duty but the power to carry out proper orders of the commission, including changes in municipal sewage disposal facilities. Such power arises from express language of the statutes, fair implication therefrom, and from necessity to

permit the town to carry out its duty. The town has the power to do what it has the duty to do.

Similarly, as to the town council's authority to enter consent orders, it is unreasonable to suggest it may not submit rather than resist doing its duty. We refuse to read into the statute on obligation of the council to litigate a duty which it may recognize during the informal negotiation required by § 455B.12, The Code, 1966. In entering an agreement for a consent order requiring a change in its sewage system, the governing body of the municipality makes the same kind of judgment as when it passes a resolution of necessity prior to other exercises of its police power. Admittedly the order represents a deeper commitment because it does not permit the town to rescind its action, but this commitment is dictated by the legislative policy manifest in chapter 455B which removes from municipalities any discretion to pollute state waters.

We note the order did not require financing in a specific manner. Such projects can be financed by special assessment without voter approval. § 391A.26, The Code. Thus, the legislature has not created a conflict with statutory requirements requiring voter approval for alternative financing measures.

We hold the consent order in this case was within the authority of the commission and the town.

IV. *The financial burden.* The town argues the order is unreasonable because a sewage treatment facility would be impossible for it to finance. The commission asserts the financial problems of the town may not be considered as an excuse or in mitigation of its failure to comply with the consent order.

We are unable to agree with either position but do not believe the issue has any effect on the result in this case.

It is necessary first to consider what the statutes require as to reasonableness and then the problems encountered by the town.

■ Five code sections are involved, §§ 455B.2(9), 455B.9(5), 455B.17(4), 455B.21, and 455B.24, The Code, 1966. Section 455B.2(9) includes a municipality and its governing body within the definition of "person" to whom the chapter is applicable. There is a manifest legislative policy that all polluters are to be treated equally. Municipalities are not favored.

Section 455B.9(5) recognizes that where changes are to be made in disposal systems the system itself is planned by the polluter, with the department of health maintaining a power of review of plans and specifications. This means the town is not told precisely what system it must install, although the statute requires the system must be appropriate to stop pollution of state waters.

As previously noted § 455B.17(4) requires the commission to give the offender a reasonable time to put in use the method ordered, unless there is a public health danger.

■ Section 455B.21 concerns the effect of a commission order which is not appealed. In such event " * * * the action of the commission in the matter involved shall be deemed conclusive and the validity and reasonableness thereof shall not be raised in any other action or proceeding, but this shall not preclude the commission from modifying or rescinding its action." Since no appeal was attempted in this case we are not confronted with the issue whether a consent order is appealable. However, such orders are generally not subject to appellate review. See annot. 69 A.L.R.2d 755, 767. This is on the theory that the consent of a party operates as waiver of the right of appeal. Van Gorden v. Schuller, 192 Iowa 853, 185 N.W. 604 (1921). One who agrees to an order is hardly an "aggrieved party" empowered to appeal by § 455B.18, The Code, 1966.

■ After saying the validity and reasonableness of an order not appealed may not be raised in any other action or proceeding, the legislature in § 455B.24 provided the trial court in an enforcement proceeding must find the order "lawful and reasonable" before ordering the party to comply with it, and contempt occurs only if the court after hearing the matter enters a compliance order and the person fails to obey.

These sections are *in pari materia* and "must be construed, considered and examined in the light of their common purposes and intent." Northwestern Bell Tel. Co. v. Hawkeye State Tel. Co., 165 N.W.2d 771, 774 (Iowa 1969).

■ We do not believe the legislature intended the provisions of § 455.24 to nullify the provisions of § 455.21. We hold the validity and reasonableness of a colorable commission order are conclusively established by failure to appeal as to circumstances then existing and reasonably foreseeable. However, in an enforcement proceeding under § 455B.24, if subsequent events not reasonably foreseeable at the time the unappealed order was entered raise a question as to the validity or reasonableness of the order, such issues are to be heard and determined, and a compliance order is not to be entered unless the court finds the order lawful and reasonable under circumstances then existing. Since § 455B.24 makes failure to obey the commission order *prima facie* evidence of comtempt, the burden to prove illegality or unreasonableness is on the party resisting enforcement. Cf. § 455B.49, The Code, 1973.

■ The statute does not permit financial considerations to affect the legality of a commission order. Polluters are equally affected by the prohibitions and mandates of the law without regard to the size of their pocketbooks. However, we are convinced the legislature intended financial problems subsequent to and not reasonably foreseeable at the time of an otherwise final commission abatement order to be among the factors properly considered in an enforcement proceeding on the issue of the reasonableness of its terms. Such evidence does not bear on whether the pollution must be abated, but it does affect how and when abatement is to be accomplished.

For authorities generally in accord with the position we take as to the town's contention, see City of Miami v. City of Coral Gables, 233 So.2d 7 (Fla.App.1970) (a municipality cannot plead poverty in resisting removal of a public health hazard); Board of Purification of Waters v. Town of Bristol, 51 R.I. 243, 153 A. 879 (1931) (expense does not justify refusal to abate pollution); 39 C.J.S. Health § 21(c) at 837 ("Where a valid order has been issued by the health authorities directing a municipality to erect a proper sewage system, compliance therewith on the part of the municipality cannot be resisted because of the expense involved.").

We rest our view as to the commission's position largely on construction of the statute with its repeated reference to the reasonableness standard. Cf. Hines and Schantz, Improving Water Quality Regulation in Iowa, 57 Iowa L.Rev. 231 at 327–329 (1971).

Our next consideration is the financial hardship asserted by the town in this case. The town has a population of about 340; prospects of growth are dim. At the time the consent order was entered the town council expected a substantial share of the expense of the required facility would be borne by the Farmers Home Administration (FHA). A consulting engineering firm, Culver Engineering, was hired to draw preliminary plans for a town sewage facility and did so. The facility would have cost $171,715. It involved a collection system running the sewage to a lagoon for treatment. One of the requirements of the FHA was advance agreement by 80% of the potential customers to connect to the system. The town asserts it was unable to get such agreement and the FHA program

was not pursued. Arguably this development was not reasonably foreseeable at the time the consent order was entered.

The town then considered a system which would simply collect the discharge from existing tile and pump it into the lagoon. Since it would receive water in the tile as well as sewage, an expensive pumping system would be required unless the town could get government permission to bypass directly to the creek at times of high flow. A cost estimate of $186,000, assuming permission to bypass would not be obtained, was given December 4, 1970, by Culver Engineering on that alternative.

Various programs have been available for financing construction of municipal sewage facilities. They are extensively discussed in Contemporary Studies Project: Impart of Local Governmental Units on Water Quality Control, 56 Iowa L.Rev. 804, 816–821. Under one of the programs discussed the town would pay only 20% of the cost and could issue general obligation bonds to fund its share. The record here is devoid of any showing the town made any serious effort to qualify for any of them. Financial questions in this case go to the timing of abatement rather than its cost.

■ Trial court erred in refusing to consider evidence of economic hardship on the issue of reasonableness of the abatement schedule. However, even if such evidence as was offered had been considered, the result in this case would be unaffected.

The town never asserted financial hardship prior to this action but on October 1, 1970, did request through Culver Engineering that it be given until the end of 1971 to complete the project because of the time expected to be taken in developing its alternative collection system and obtaining state and federal financial assistance. The abatement schedule fixed by trial court gave the town until April 15, 1973, to start construction, long beyond the time thought necessary by the town just before this action was commenced.

Thus, although economic difficulties not reasonably foreseeable when a consent order is made bear on the reasonableness of the abatement schedule, the new schedule fixed by trial court made the issue moot in this case.

■ V. *Prematurity of this action.* The town alleges the state department of health was responsible for its failure to meet the consent order abatement schedule in contending this enforcement proceeding was premature. It is true there was undue delay in department of health response to the filing of the town's preliminary engineering report.

The town submitted the required preliminary engineering report to the state department of health prior to the April 1, 1969, deadline but the department did not respond to this submission until July 21, 1970, long after January 1, 1970, the date by which final plans were to have been drawn and submitted, and on the eve of the August 1, 1970, deadline for initiating construction.

The commission finally noted the failure of the town to meet its schedule on March 24, 1970. On that date its counsel wrote the mayor requesting prompt submission of its final engineering plans. The mayor responded on March 27, 1970, reporting the town was advised by Culver Engineering its plans had been submitted and approved. He stated the town was waiting for its FHA financing to be approved and referred the commission counsel to Culver Engineering for further response.

On September 15, 1970, the commission attorney wrote Culver Engineering, pointing out the August 1, 1970, deadline had passed without a report to the commission concerning letting of a contract. He suggested a request for extension of time be submitted to the commission by September 28, 1970.

On October 1, 1970, Culver Engineering directed a letter to the commission. It reported: (1) the town's FHA financing

plan had fallen through; (2) the alternative collection system was being investigated; (3) upon completion of the investigation, approval of that system by the department of health would be sought; and (4) federal and state financial assistance would be requested. An extension of time until the end of 1971 for completion of the project was requested.

The letter did not urge the failure of the department of health to respond to the preliminary report until July 21, 1970, was a reason for the town's failure to meet the schedule. This reason was not suggested until the commission denied the extension of time and commenced this action.

In this action the town has taken the position it is not obligated to obey the consent order because it is unauthorized and unreasonable. No excuse has ever been advanced by the town for its failure to file progress reports. Its argument this action is premature is palpably unconvincing. The commission had sufficient reason to initiate this action; the town's position since then supports the commission's concern about the necessity of reinforcing its order by obtaining a court order requiring compliance.

Although the failure of the department of health to respond to the submission of the preliminary engineering report might have been urged prior to January 1, 1970, as a proper basis for commission modification of its abatement schedule, it was not. The town was content to let matters slide until the commission awakened to the fact the consent order was not being followed.

This action was not premature.

■ VI. *Disposition upon remand.* We agree with trial court the consent order was lawful. We believe the trial court's decree rescheduling abatement was reasonable. That schedule is now moot. Since no stay of the decree was obtained it might have been enforced by the commission during the pendency of appeal but was not.

■ The commission has requested entry of an order fixing a new abatement schedule. We believe it is appropriate to do so since the case has been submitted to us *de novo*.

Since the department of environmental quality has succeeded under § 455B.45, The Code, 1973, to the functions of the department of health under the prior statute plans and progress reports will be ordered submitted to that department.

Trial court's decree is modified in that its present abatement order is vacated and the following substituted:

"It is ordered that the defendant Town of Paton shall through its appropriate authorities:

1. Submit final plans and specifications for the required sewage treatment facilities to the department of environmental quality by January 1, 1974.

2. Award contracts and initiate construction of required facilities by August 1, 1974.

3. Submit 60 day progress reports to the department of environmental quality commencing July 1, 1973."

Except as modified trial court's decree is affirmed. The case is remanded for such further enforcement proceedings as may subsequently be required.

Modified, affirmed, and remanded.